**Electronically Filed
Supreme Court
SCWC-15-0000759
04-APR-2018
08:34 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

GJ WILLIANDER,
Petitioner/Defendant-Appellant.

SCWC-15-0000759

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-15-0000759; CR. NO. 14-1-1212)

APRIL 4, 2018

RECKTENWALD, C.J., NAKAYAMA, McKENNA, POLLACK, AND WILSON, JJ.

OPINION OF RECKTENWALD, C.J.

## I.  Introduction

This case requires us to determine if the circuit court erred in failing to continue trial because of the unavailability of a defense witness.

Defendant GJ Williander was charged with second degree robbery of the complainant, Kyle Aihara. On the first day of his trial,[1] Williander moved to continue because police officer Darren Sunada was unavailable to testify. Officer Sunada had arrested Williander and spoken with him shortly after the alleged robbery. Williander argued that Officer Sunada's testimony would provide important evidence regarding Williander's state of mind at the time of the incident. The State objected, noting that Officer Sunada was unavailable because he was on injured leave, and would not return to duty for several months. The circuit court denied Williander's motion.

At trial, Aihara testified that on the night of the incident, he was walking when someone hit him from behind. Aihara said that while he heard a voice, he could not make out what was said, as he was in shock. A bystander, Michael Ragudo, testified that he observed Aihara and Williander from across the street, and heard Williander yell, "Give me your wallet," "Give me your fucking wallet," and saw Williander strike Aihara. After the State rested its case, Williander again moved to continue trial, and also moved for a mistrial, which the circuit court denied.

The defense's only witness was Williander, who testified that he had no recollection of the incident because he

---

[1]     The Honorable Rom A. Trader presided.

had consumed substantial amounts of alcohol on the afternoon and night in question.  Following closing arguments, Williander renewed his motion for mistrial, which the circuit court denied, and the jury found Williander guilty as charged.  Williander then moved for a new trial, which the circuit court denied.  On appeal, the ICA affirmed the circuit court's holdings.

In his application to this court, Williander argues that the circuit court erred in denying Williander's motion to continue trial, motion for mistrial, and motion for new trial because of Officer Sunada's unavailability.  We conclude that defense counsel exercised due diligence by properly subpoenaing Officer Sunada.  We also conclude that Officer Sunada's observations provided a means for Williander to challenge Ragudo's testimony that Williander demanded Aihara's wallet.  Ragudo's testimony was the only evidence presented to support finding Williander guilty of robbery rather than assault.  Thus, Officer Sunada's testimony was relevant and material testimony that benefitted Williander.  Accordingly, Williander's right to compulsory process to obtain witnesses in his favor was violated, and the circuit court erred in denying Williander's motions.

We therefore vacate the ICA's judgment on appeal and the circuit court's judgment of conviction and probation sentence, and remand for further proceedings consistent with this opinion.

## II.  Background

## A.  Circuit Court Proceedings

On July 29, 2014, a grand jury indicted Williander for robbery in the second degree, in violation of Hawaiʻi Revised Statutes (HRS) § 708-841(1)(a).  In discovery, Williander received Sheldon Matsui's statement, which included:

> On June 13th, 2014 I was at 24hr Fitness on Kapiolani Blvd. and saw an older Asian male holding his wrist and another bystander telling me not to go outside. When I looked outside I saw a Polynesian male approaching people walking by on the sidewalk and faking like he was going to hit them.  The Polynesian male was about 5'7 - 5'10 and about 200 - 240 lbs.  He seemed disoriented and kind've [sic] stumbled down the sidewalk.  He eventually walked towards Kalakaua Ave. and I lost sight of him.  When I got to my car I called 911.

Williander received a copy of Matsui's 911 call, in which Matsui described the male as a "'crazy guy with no shirt on'" that was "'trying to fight everybody.'"  Williander also received a copy of Officer Sunada's written police report regarding the incident, which states that he responded to the scene at 10:28 p.m. and observed a shirtless man:

> I observed the male, later identified as GJ WILLIANDER, to have curly black hair and to be about 5-9" [sic] tall.  Upon making the above observations, I immediately stopped and exited my blue and white police car and identified my self [sic] to WILLIANDER as a police officer and informed him that he was being detained as a suspect in a robbery case.  I then instructed WILLIANDER to place his hands behind his back.  WILLIANDER complied by placing his hands behind his back while dropping to his knees and flopping to the ground on his stomach under his own power.  While on the ground, WILLIANDER was handcuffed with his hands behind his back without incident and was

4

> repositioned into the seated position.
>
> . . . .
>
> While with WILLIANDER, I was able to smell a strong odor resembling an alcoholic type beverage to be coming from his person. WILLIANDER was slurring his words and rambling unintelligible verbiage. WILLIANDER was also unsteady on his feet while walking.

### 1. Motions for Continuance

In September 2014, Williander moved for a continuance, stating that he needed more time to investigate. The State did not object, and the court granted Williander's motion. In November 2014, Williander moved for a second continuance, as there was "a matter of outstanding discovery." The circuit court granted Williander's motion over the State's objection. In February 2015, Williander requested a third continuance because his counsel's trial schedule was full. Over the State's objection, the court granted Williander's request. In April 2015, Williander requested a fourth continuance, as he was unable to secure witness Sheldon Matsui. Over the State's objection, the circuit court granted the continuance, designating it as "a last continuance for the defense." In July 2015, on the day of trial, Williander moved for a fifth continuance because Officer Sunada was unavailable to testify. This fifth motion for continuance is at issue.

When asked for an offer of proof for his fifth motion for continuance, Williander's counsel argued that Officer Sunada

was a necessary witness because: (1) he was the arresting officer; (2) the arrest occurred within a few minutes of the incident; (3) his police report had the most detailed information about "Williander's state at that time"; and (4) his testimony was important evidence "as to state of mind, an element in this case." The State objected, noting that the court had designated Williander's fourth continuance as a "last continuance," and also stating that Officer Sunada was on injured leave, with an anticipated return for light duty in September 2015.

Defense counsel continued his arguments stating that, without Officer Sunada, he did not "have a significant defense" because Williander's memory of the events was limited by his intoxication. Thus, defense counsel argued that it had only two helpful witnesses, Matsui and Officer Sunada, and Matsui did not have as close contact with Williander as Officer Sunada.

Williander also stated that with regard to whether the parties could stipulate to the testimony of Officer Sunada, Williander would prefer live testimony because he only had one witness, and a stipulated police report would have "less value" than live testimony. Further, Williander stated that Officer Sunada's report had more detail about the incident because he was the person who initially detained Williander and stated his observations of Williander's intoxication.

The court denied Williander's motion, reasoning:

> And I'm not saying that there's a lack of

6

> diligence on your part relative to Officer Sunada because, you know, he's out. And even if you had been diligent, and I'm presuming that up to this point in time, he is out on injured leave, he's not available. But I am of the view that this case is not unduly complex and that while it is less than ideal from the standpoint of the defense strategy and availability of witnesses and other information, that at this point there's been, as I indicated, several continuances.
>
> . . . .
>
> And while Officer Sunada might be able to provide some impeachment, as we often know police officers do do in cases like this, I'm not resting it solely on that basis. And essentially it's abuse of discretion and I don't believe on review that this will be viewed as such. And so I think the defense has had an ample opportunity to prepare and we're ready for trial and so we're going to proceed.

## 2. Trial

### a. The State's Case-in-Chief

At trial, the State's first witness was Kyle Aihara, the complainant. He testified that he is legally blind, and explained that he is not "completely blind," but has "visual limitations." Aihara testified that on June 13, 2014, at approximately 10:20 p.m., he was walking east on Kapiʻolani Boulevard, near 24 Hour Fitness, when he "felt something hit [him] from behind . . . and [he] fell to the ground." Aihara testified that he "heard a voice," but "couldn't make it out," as he "was kind of in shock." According to Aihara, he fell forward on his knees and his face, felt pain in his left wrist, and then "felt a presence of someone on top of [him] . . . ." Aihara stated that Michael Ragudo, whom Aihara did not know prior to the

7

incident, helped him up and gave him his glasses, which had fallen off.  Aihara testified that his wallet was still in his pocket.  Aihara stated that Ragudo then assisted him into the lobby of 24 Hour Fitness, where Ragudo called the police.  On cross-examination, Aihara testified that he did not have any recollection of anyone demanding his wallet, reaching into his pocket to try to take his wallet, or touching his pants.

Michael Ragudo testified that, at 10:20 p.m. on the night in question, he was on Kapiʻolani Boulevard across the street from 24 Hour Fitness when he saw "two guys kind of horsing around."  According to Ragudo, he heard one guy yell "clearly" and "loudly" in the tone of a "loud demand" or "command," "Give me your wallet," "Give me your fucking wallet," which indicated to him that they were not just horsing around.  Ragudo testified that the "two guys were kind of struggling," and that he heard, "Give me your wallet," twice.  Ragudo testified that he saw one man down on the ground on his hands and knees, and the other man above him "reach up and then strike down towards the back of the man's head."  Ragudo stated that he then yelled and ran across the street, at which point the suspect went Ewa-bound on Kapiʻolani.  Ragudo stated that he gave Aihara his glasses, helped him up, and then took him into the 24 Hour Fitness lobby and called 911.  According to Ragudo, when he was in the 24 Hour Fitness lobby, he saw the suspect walking back towards them and held the door closed in response.  Ragudo testified that the

suspect, now shirtless, was walking back and forth "agitatedly" on the sidewalk in front of 24 Hour Fitness. Ragudo testified that the police arrived five to ten minutes later. Ragudo also testified that he did "a field identification" of Williander about 15 to 20 minutes after the police arrived on the scene.

On cross-examination, Ragudo testified that he heard the suspect demand the wallet twice, but that in his handwritten statement, referenced only one demand. Ragudo explained that "the first demand was kind of garbled, I wasn't really paying attention to it, but I clearly heard him the second time 'Give me your fucking wallet,' which was when I yelled from across the street." Ragudo agreed that he did not observe anyone go through Aihara's pockets, or see anyone pat Aihara down, and that he "just saw [Williander] on top of [Aihara] and deliver the punch." On redirect examination, Ragudo again explained that the statement, "Give me your fucking wallet," was "shouted very loudly so I could hear it clearly," and agreed that he did not have any doubt as to what he heard. After calling two additional police officers, the State then rested its case.

### b. Motion to Submit Officer Sunada's Police Report into Evidence and Motion for Mistrial

Prior to the defense beginning its case, Williander moved to enter into evidence a redacted version of Officer Sunada's police report under the hearsay exception in Hawaiʻi Rules of Evidence (HRE) Rule 804(b)(8). While the court

acknowledged that Officer Sunada was unavailable, it denied Williander's request, finding that the hearsay exception did not apply.

In response, Williander moved to continue trial until September, when Officer Sunada would be available. The State objected, and also asserted that it was unwilling to stipulate to any portion of the report. The court denied the motion to continue trial. Williander then moved for a mistrial, arguing that without Officer Sunada's testimony, "Going forward at this point is just impossible for us." The State objected, and the court denied the motion for mistrial.

### c. The Defense's Case-in-Chief

The defense's only witness was Williander. Williander testified that at around 2:00 p.m. on the day of the incident, he drank about three 40-ounce containers of malt liquor at home. Williander stated that around 5:00 p.m., he went to a bar, and was "pretty buzzed" even before he continued to drink "hard liquor" there. Williander testified that he was drunk that night and after his "first few drinks" at the bar, he could not remember what happened. Williander stated that the next thing he remembered was waking up in the Honolulu Police Department (HPD) "drunk tank" the following day. Williander testified that he did not remember assaulting Aihara or making any statements to Aihara or others in the area. On cross-examination, Williander testified that he did not know Aihara or Ragudo. Williander also

10

testified that he did not deny striking Aihara, but that he "just [didn't] remember." Williander further testified that he did not remember yelling, "Give me your wallet."

### d. Closing Arguments

The State argued that Williander's statement, "Give me your fucking wallet," indicated that he intended to steal Aihara's wallet. The State also argued that Williander did not deny striking Aihara or making the statement, "Give me your fucking wallet." At several points in closing arguments, the State addressed Ragudo's recollection of Williander's demand for the wallet. The State asserted that Ragudo "was confident" when he testified that he heard the demand for the wallet and that "[t]he demand for the wallet was clear and it was unequivocal." The State also argued that Ragudo did not "have a bias in this case." At the end of closing arguments, the State asserted that "those four words are what this case is about -- 'Give me your wallet.'"

Williander argued that while there is "a lot" of evidence to show that he assaulted Aihara, the State is "overreaching" with regards to the robbery. Williander argued that the only evidence of robbery was "those four words Mr. Ragudo says he heard GJ say across a six-lane boulevard at 10 PM on a Friday night." Williander argued that Ragudo was not accurate in his recollection of what Williander said to Aihara. Williander asserted that "the verbal demand is everything because

11

there's nothing stolen . . . ."

### e. Renewed Motion for Mistrial

After closing arguments, Williander renewed his motion for mistrial, incorporating his previous arguments. Williander also argued that the defense was "hammered with" Ragudo's testimony that Williander demanded the wallet, particularly in the State's closing arguments, because the defense did not have the opportunity to call Officer Sunada as a witness. Williander also argued that, according to his report, Officer Sunada "would have said eight minutes later . . . [he] was with Mr. Williander and he was slurring his words, rambling unintelligible verbiage." Williander further argued that the defense had no other means to respond to the State's arguments. The court denied Williander's renewed motion for mistrial.

The jury found Williander guilty as charged of robbery in the second degree.

### 3. Post-trial

Following the jury's verdict, Williander made a brief oral motion for a new trial based on Officer Sunada's absence, as the "reliability of Mr. Ragudo's testimony was critical in the outcome of this case." Williander also noted that he planned to make the motion in writing. The court denied the oral motion without prejudice with leave for Williander to file a written motion.

Approximately a week later, Williander filed a motion

12

for new trial, reiterating his earlier arguments, and arguing that he satisfied the factors in State v. Lee[2] required for a grant of a continuance. The State filed its opposition, arguing that Officer Sunada's testimony was "mere impeachment," as he was not present during the robbery, and would not have provided testimony that bears directly upon the issue of guilt. The State argued that the "sole reason" Williander sought Officer Sunada's testimony was to impeach the credibility of Ragudo's testimony that Williander demanded Aihara's wallet. The State also argued that Williander could not use Officer Sunada's testimony to negate Williander's state of mind because the jury cannot consider self-induced intoxication to negate the defendant's state of mind. The State then argued that Williander could have attempted to impeach Ragudo's testimony through Matsui, who would have provided testimony "consistent with intoxication."

At the hearing on Williander's motion for new trial, the circuit court acknowledged that "when officers are on injured leave, they are precluded per HPD policy from appearing in court to testify," and noted that the defense did everything it could to secure Officer Sunada's attendance. Williander argued that "there was no replacement witness for [Officer Sunada]," and that

---

[2]      Lee held that, to merit a continuance, the defendant must show that "due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant." 9 Haw. App. 600, 604, 856 P.2d 1279, 1282 (1993) (quotation omitted).

Matsui was not a "comparable witness" because Matsui "did not have direct contact," including full visual, smell, and hearing, with Williander, but rather observed him through the window at 24 Hour Fitness. The State argued that Officer Sunada's report did not provide enough contextual detail to show the "exact degree of [Williander's] incoherence." The State also contended that Officer Sunada was a "mere impeachment witness," and that the "denial of a continuance to procure the testimony of an impeachment witness is not an abuse of discretion."

The court ultimately denied Williander's motion for new trial. In its Findings of Fact, Conclusions of Law, and Order Denying Defendant's Motion for New Trial, the court concluded that Officer Sunada was not present during the robbery, and thus would not have provided testimony that bears directly upon the issue of guilt. The court found that the only reason Williander "sought to procure Officer Sunada's testimony was to impeach the credibility of Ragudo's assertion" that he heard Williander demand Aihara's wallet. The court also concluded that Officer Sunada was unavailable at trial and defense counsel made "all reasonable efforts" to secure his testimony, but that Officer Sunada's unavailability was not good cause for a continuance, given that Williander "had been granted four prior continuances, with the April 15, 2015 continuance designated as his last." Moreover, the court concluded that Matsui was available to testify, but that Williander did not call him to testify. Thus,

14

the court concluded that it did not abuse its discretion in denying Williander's motion to continue, and that Williander's right to a fair trial was not denied.

The court sentenced Williander to four years of probation, $1,078.97 restitution to Aihara for medical expenses, and thirty days' imprisonment in addition to the time he had already served.  Williander timely appealed.

## B.    ICA Proceedings

In Williander's opening brief before the ICA, Williander argued that the circuit court erred in denying his motions to continue trial, motions for mistrial, and motions for new trial.  Williander applied the four factors set forth in State v. Lee, arguing that these factors supported granting a continuance.[3]  In the State's answering brief, the State argued, applying the Lee factors, that the court did not abuse its discretion in denying Williander's motion for continuance.

In its Summary Disposition Order, the ICA applied the Lee factors.  The ICA found that the first and third Lee factors were satisfied.  However, the ICA determined that Officer Sunada's testimony would not have tendered "'substantial favorable evidence'" to satisfy the second Lee factor.  The ICA found that Williander's testimony that he was intoxicated was not contradicted by the State's witnesses.  Thus, Officer Sunada's testimony was not needed in order to impeach the State's

---

[3]      See supra note 2.

15

witnesses on the issue of Williander's state of intoxication.

Additionally, the ICA stated:

> Aihara could not understand anything that Williander said to him.  Ragudo did not testify that Williander did not slur his words, only that when Williander shouted, Ragudo could hear what Williander said.  Indeed, Ragudo testified that Williander's speech was at first "garbled."  Conversely, Officer Sunada was not present during the offense and could not directly contradict Aihara and Ragudo's version of those events.  Moreover, there is no indication Officer Sunada heard Williander's speech when shouting.  Thus, Officer Sunada's testimony could not have impeached Aihara or Ragudo's testimony.

The ICA determined that, in any event, under HRS § 702-230(2), evidence of Williander's "self-induced intoxication was not admissible to negative his state of mind."

The ICA also concluded that Williander failed to satisfy the fourth Lee factor regarding material prejudice.  The ICA reasoned again that HRS § 702-230(2) "prevents the use of self-induced intoxication to negate the requisite state of mind," and thus found that the denial of the continuance did not materially prejudice Williander.

Therefore, the ICA held that the circuit court did not abuse its discretion in denying Williander a fifth continuance. In light of its conclusions that Officer Sunada's testimony was "not admissible to disprove the requisite intent and at best was sought for the purposes of impeachment," the ICA rejected Williander's arguments that the circuit court abused its discretion in denying his motions for a mistrial and a new trial. Accordingly, the ICA affirmed the circuit court's conviction and

16

probation sentence.

Chief Judge Nakamura dissented, concluding that there were valid grounds for a continuance to enable Williander to present Officer Sunada's testimony because all four Lee factors were met. Thus, Chief Judge Nakamura concluded that the circuit court abused its discretion in denying Williander's motion for a continuance.

In disagreement with the majority, Chief Judge Nakamura determined that Williander satisfied the second and fourth Lee factors. Chief Judge Nakamura reasoned that the only testimony offered by the State to show that Williander was guilty of robbery, as opposed to assault, was Ragudo's testimony that he heard Williander yelling, "Give me your wallet. Give me your fucking wallet," while Williander was punching a man. Chief Judge Nakamura noted that Aihara stated that he heard a voice, but could not make out what was said, and had "no recollection of anyone demanding his wallet before he was assaulted; he never felt anyone reach into his pocket to try and take his wallet; he had no recollection of anyone touching his pants anywhere; and he still had his wallet after the assault." Additionally, Chief Judge Nakamura noted that Williander testified that he had "prodigious" amounts of alcohol and had no recollection of the charged incident, and that Officer Sunada's police report stated that Williander "smelled of alcohol and was slurring his words and rambling unintelligible verbiage." Chief Judge Nakamura

17

reasoned that Officer Sunada's observations, as reflected in his police report, "provided the best and perhaps the only means for Williander to meaningfully challenge and cast doubt on Ragudo's testimony that he heard Williander make a demand for Aihara's wallet."

### III. Standards of Review

### A. Motion for Continuance

"A motion for continuance is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion." State v. Lee, 9 Haw. App. 600, 603, 856 P.2d 1279, 1281 (1993). "Generally, to constitute an abuse, it must appear that the court clearly exceeded the bounds of reason or disregarded rules or principles of law or practice to the substantial detriment of a party litigant." State v. Crisostomo, 94 Hawaiʻi 282, 287, 12 P.3d 873, 878 (2000) (internal quotation marks, citation, and brackets omitted).

### B. Motion for New Trial

> As a general matter, the granting or denial of a motion for new trial is within the sound discretion of the trial court and will not be disturbed absent a clear abuse of discretion. . . . The trial court abuses its discretion when it clearly exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party litigant.

State v. Yamada, 108 Hawaiʻi 474, 478, 122 P.3d 254, 258 (2005) (quoting State v. Kim, 103 Hawaiʻi 285, 290, 81 P.3d 1200, 1205 (2003)).

18

## C.    Motion for Mistrial

>       The denial of a motion for mistrial is within the
>       sound discretion of the trial court and will not be
>       upset absent a clear abuse of discretion.  The trial
>       court abuses its discretion when it clearly exceeds
>       the bounds of reason or disregards rules or principles
>       of law or practice to the substantial detriment of a
>       party litigant.

State v. Lagat, 97 Hawai'i 492, 495, 40 P.3d 894, 897 (2002)

(internal quotation marks and citations omitted).

### IV.   Discussion

There is one issue before this court:

>       Whether the ICA gravely erred in holding that the
>       circuit court did not err in denying Williander's
>       Motions to Continue Trial, Motions for Mistrial, and
>       Motions for New Trial based on defense witness Officer
>       Sunada's unavailability.

This court must consider whether the circuit court

violated Williander's right to compulsory process to obtain

witnesses in his favor by denying Williander's motion to continue

trial to obtain Officer Sunada as a witness.  See State v.

Valmoja, 56 Haw. 452, 454, 540 P.2d 63, 64 (1975).

>       The due process guarantee of the Federal and Hawaii
>       constitutions serves to protect the right of an
>       accused in a criminal case to a fundamentally fair
>       trial.  As relevant here, a fundamental element of due
>       process of law is the right of compulsory process.
>       The right to compulsory process affords a defendant in
>       all criminal prosecutions, not only the power to
>       compel attendance of witnesses, but also the right to
>       have those witnesses heard.
>
>       Although the right to compulsory process is of
>       paramount importance in assuring a defendant the right
>       to a meaningful defense and a fair trial, it does not
>       guarantee the right to compel attendance and testimony
>       of all potential witness absolutely.  In other words,

19

the right is not without just limitations.

State v. Acker, 133 Hawaiʻi 253, 281, 327 P.3d 931, 959 (2014) (quotation marks and citations omitted).

Both Williander and the State utilize the Lee test[4] in evaluating whether a motion to continue should have been granted. In discussing the Lee test, this court has stated:

> This court has not explicitly adopted the Lee test. However, we have often applied some combination of these factors in evaluating a motion for a continuance to obtain the testimony of an unavailable witness at trial. In State v. Valmoja, 56 Haw. 452, 540 P.2d 63 (1975), we held that the trial court abused its discretion in denying a motion for a continuance where the defendant exercised due diligence in attempting to obtain the testimony of the absent witness and the materiality of the witness's evidence was apparent. 56 Haw. at 454, 540 P.2d at 64. In State v. Mara, 98 Hawaiʻi 1, 41 P.3d 157 (2002), we concluded that the circuit court did not abuse its discretion in denying the defendant's request for a continuance where the defendant failed to show that he was materially prejudiced by his inability to present the unidentified witness's testimony. 98 Hawaiʻi at 14-15, 41 P.3d at 170-71.

State v. Villiarimo, 132 Hawaiʻi 209, 223, 320 P.3d 874, 888 (2014).

We conclude that the Lee test goes too far in limiting the right to compulsory process, thus creating unnecessary burdens on defendants who wish to exercise this right. For the reasons presented below, we hold that the relevant factors are:

---

[4] The Lee test includes the following factors: "due diligence has been exercised to obtain the attendance of the witness, that substantial favorable evidence would be tendered by the witness, that the witness is available and willing to testify, and that the denial of the continuance would materially prejudice the defendant." 9 Haw. App. at 604, 856 P.2d at 1282.

20

(1) whether counsel exercised due diligence in seeking to obtain the attendance of the witness; and (2) whether the witness provides relevant and material testimony that benefits the defendant.

Washington v. State of Texas created the limitation on the right to compulsory process that the testimony has to be relevant and material to the defense.  388 U.S. 14, 23 (1967); see Valmoja 56 Haw. at 454, 540 P.2d at 64.  Later cases clarified that the testimony must benefit the defendant.  See United States v. Valenzuela-Bernal, 458 U.S. 858, 867 (1982) (to establish a violation of this right, the defendant must "make some plausible showing of how [the] testimony would have been both material and favorable to his defense"); State v. Mitake, 64 Haw. 217, 224, 638 P.2d 324, 330 (1981) (to establish a violation of this right, the defendant must show "that the testimony denied the defendant would have been helpful to him [or her]"); State v. Savitz, 67 Haw. 59, 60–61, 677 P.2d 465, 466–67 (1984); State v. Diaz, 100 Hawaiʻi 210, 226, 58 P.3d 1257, 1273 (2002); Acker, 133 Hawaiʻi at 281, 327 P.3d at 959.[5]

This court has also held that a defendant seeking a continuance must make a showing that defense counsel exercised due diligence in obtaining the attendance of witnesses.  See

---

[5]     The U.S. Supreme Court explained that the testimony must be beneficial to the defendant since the Sixth Amendment guarantees a defendant in a criminal case "compulsory process for obtaining witnesses in his favor." Valenzuela-Bernal, 458 U.S. at 867 (quoting U.S. Const. amend. VI (emphasis added)).

Valmoja 56 Haw. at 454, 540 P.2d at 64; Mara, 98 Hawaiʻi at 8-9, 41 P.3d at 164-65.

Accordingly, we hold that the relevant factors to consider in evaluating whether a motion for continuance should be granted are: (1) whether counsel exercised due diligence in seeking to obtain the attendance of the witness; and (2) whether the witness provides relevant and material testimony that benefits the defendant.[6] These factors protect the defendant's right to compulsory process while providing "just limitations" on the defendant's ability to obtain witnesses in the defendant's favor. See Acker, 133 Hawaiʻi at 281–82, 327 P.3d at 959–60.

## A. Due Diligence

Defense counsel exercised due diligence in seeking to obtain Officer Sunada as a witness. On June 16, 2015, Officer Sunada was served with a subpoena for the July 13, 2015 trial. Officer Sunada was not able to testify at the trial because he was on injured leave at the time. In Valmoja, this court concluded that defense counsel exercised due diligence in serving subpoenas on the absent witnesses at a reasonable period of time prior to trial. 56 Haw. at 454, 540 P.2d at 64. In contrast,

---

[6] Lee is overruled to the extent that it holds that the following factors should be utilized in evaluating a motion for continuance: (1) "substantial favorable evidence would be tendered by the witness"; (2) "the witness is available and willing to testify"; and (3) "the denial of the continuance would materially prejudice the defendant." See Lee, 9 Haw. App. at 604, 856 P.2d at 1282. As noted above, the relevant standard is whether the witness will provide relevant and material testimony that benefits the defendant. And while the availability of the witness might be relevant to the question of whether the testimony will be beneficial to the defendant, it is not a distinct, dispositive factor.

22

defense counsel in Lee, where the ICA held that the trial court did not abuse its discretion in denying the continuance, did not subpoena the potential defense witness. 9 Haw. App. at 604, 856 P.2d at 1282. Thus, Williander's defense counsel exercised due diligence by properly subpoenaing Officer Sunada.

**B.    Relevant and Material Testimony that Benefits Williander**

Officer Sunada's testimony was relevant and material testimony that benefitted Williander. As an initial matter, Officer Sunada's testimony was inadmissible to show self-induced intoxication to negate Williander's state of mind. See HRS § 702-230; State v. Souza, 72 Haw. 246, 249, 813 P.2d 1384, 1386 (1991) ("[T]he operation of § 702-230 does not deprive a defendant of the opportunity to present evidence to rebut the mens rea element of the crime. The statute merely prohibits the jury from considering self-induced intoxication to negate the defendant's state of mind."). Thus, Officer Sunada's testimony was admissible to show that: (1) due to intoxication, Williander was not physically able to make a verbal demand for Aihara's wallet; and (2) to impeach Ragudo's testimony that Williander made a verbal demand for the wallet.

Williander agrees with Chief Judge Nakamura's dissent, which concluded that Officer Sunada's testimony provided "the best and perhaps the only means for Williander to meaningfully challenge and cast doubt on Ragudo's testimony."

The State responds that Officer Sunada's testimony

23

regarding the alcoholic odor coming from Williander would not provide impeachment evidence of Aihara or Ragudo's testimony because Aihara's testimony--that Williander's speech was "garbled" and that he could not "make out what [Williander] . . . said"--was consistent with Officer Sunada's testimony that Williander was "slurring his words and rambling unintelligible verbiage."

The State further contends that Officer Sunada's testimony "seems to suggest" that he "recognized certain utterances [Williander] made as words, albeit slurred or making no sense." Thus, the State argues that there is no reason to conclude that Officer Sunada would have opined Williander was unable to utter, "Give me your fucking wallet," and that the ICA did not err in concluding that the testimony was not substantial favorable evidence for Williander. Therefore, the State argues that the ICA did not err in concluding that Williander's contention that Officer Sunada's testimony provided Williander's only legal defense was without merit.

To determine the importance of Officer Sunada's testimony, we must look to HRS § 708-841(1)(a), which states that a person is guilty of robbery in the second degree when "in the course of committing theft," the person "uses force against the person of anyone present with the intent to overcome that person's physical resistance or physical power of resistance." Here, the only testimony offered by the State to support a

24

finding that Williander was in the course of committing theft when he exerted force upon Aihara was Ragudo's testimony that from across Kapiʻolani Boulevard, he heard Williander yell, "Give me your wallet. Give me your fucking wallet." Ragudo stated that while he heard Williander demand the wallet twice, "the first demand was kind of garbled," but that the second demand was clear: "Give me your fucking wallet."

Aihara testified that during the incident, he "heard a voice," but "couldn't make it out." Aihara also stated that he had no recollection of anyone demanding his wallet, reaching into his pocket to try to take his wallet, or touching his pants.

Given that Ragudo's testimony was significant evidence to support the premise that force was used in order to carry out a theft, Officer Sunada's testimony was vital to discredit Ragudo's credibility. Officer Sunada's testimony that Williander was "slurring his words and rambling unintelligible verbiage" would have been evidence from which Williander could argue that he was unable to clearly yell the alleged demand. Thus, Officer Sunada's testimony could have provided relevant and material evidence that benefitted Williander if Officer Sunada testified at trial.

Accordingly, we conclude that, in denying the motion for continuance, the circuit court violated Williander's right to compulsory process.

## C. The Circuit Court Abused its Discretion in Denying Williander's Motion to Continue Trial.

By properly subpoenaing Officer Sunada, Williander's defense counsel exercised due diligence in seeking to obtain the witness. Further, Officer Sunada's observations are relevant and material testimony that benefits Williander because the observations provide essential support for perhaps the only meaningful defense for Williander: that Williander was physically unable to make a verbal demand for Aihara's wallet. The denial of the opportunity to present Officer Sunada as a witness violated Williander's right to compulsory process. Therefore, we conclude that the circuit court abused its discretion in denying Williander's motion to continue trial. Accordingly, we also conclude that the circuit court abused its discretion in denying Williander's motions for mistrial and motion for new trial.

## V. Conclusion

For the foregoing reasons, we vacate the ICA's July 26, 2017 judgment on appeal and the circuit court's September 22, 2015 judgment of conviction and probation sentence, and remand to the circuit court for further proceedings consistent with this opinion.

Taryn R. Tomasa
for petitioner

Donn Fudo for
respondent

/s/ Mark E. Recktenwald

/s/ Paula A. Nakayama

/s/ Sabrina S. McKenna

/s/ Richard W. Pollack

/s/ Michael D. Wilson



26