**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000333
09-JUN-2023
07:59 AM
Dkt. 44 SO**

NO. CAAP-21-0000333

IN THE INTERMEDIATE COURT OF APPEALS
OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
PAULA BOYER, Defendant-Appellant

APPEAL FROM THE DISTRICT COURT OF THE THIRD CIRCUIT
KONA DIVISION
(CASE NO. 3DTA-20-01091)

SUMMARY DISPOSITION ORDER
(By: Ginoza, Chief Judge, Leonard and Nakasone, JJ.)

Defendant-Appellant Paula Boyer (**Boyer**) appeals from the May 11, 2021 Judgment and Notice of Entry of Judgment entered in the District Court of the Third Circuit[1] (**District Court**), convicting her of Operating a Vehicle Under the Influence of an Intoxicant (**OVUII**), in violation of Hawaii Revised Statutes (**HRS**) § 291E-61(a)(1).

On appeal, Boyer raises three points of error,[2]

---

[1] The Honorable Joseph P. Florendo presided.

[2] Boyer's points of error do not comply Hawai'i Rules of Appellate Procedure (**HRAP**) Rule 28(b)(4)(ii) and (iii) (requiring each point to state "where in the record the alleged error occurred" and "where in the record the alleged error was objected to or the manner in which the alleged error was brought to the attention of the court[.]"). While HRAP Rule 28(b) further provides that "[p]oints not presented in accordance with this section will be disregarded," we will nevertheless address the points of error for which the necessary information from the record appears in the statement of the case. See Marvin v. Pflueger, 127 Hawai'i 490, 496, 280 P.3d 88, 94 (2012) (internal citations, quotation marks, brackets, and ellipses omitted) (addressing cases on their merits despite noncompliance with HRAP Rule 28, "where the remaining
(continued...)

contending that the District Court erred by: (1) "not suppressing Boyers['s] un-Mirandized statements made in response to custodial interrogation and evidence that is 'fruit' of those statements"; (2) "granting, over the defense's objections, the [Plaintiff-Appellee State of Hawai'i (**State**)]'s oral motion to continue trial after the testimony of its first witness"; and (3) "considering [the] Horizontal Gaze Nystagmus test [(**HGN**)]'clues' as substantive evidence of impairment."

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to the arguments advanced and the issues raised, we resolve Boyer's points of error as follows, and affirm.

**Suppression hearing**

On October 15, 2020, Boyer filed a Motion to Suppress Evidence and Statements (**Motion to Suppress**), requesting to suppress any "[e]vidence discovered by Hawaii County police officers during [the] warrantless stop of [the] vehicle operated by [Boyer]" in violation of Boyer's Miranda[3] rights, and "[a]ny additional fruits of the poisonous tree."

At a January 12, 2021 hearing on the Motion to Suppress, Hawai'i County Police Department Officer Patrick Robinson (**Officer Robinson**) testified that on April 10, 2020, he received a report of a "reckless driver," a description of the vehicle which was "driving in an erratic matter [sic]," and that the "reporting party and the responsible party were parked in the Kona Reef Hotel parking lot." Upon arrival, Officer Robinson saw two vehicles parked in the parking lot with a sole operator in each, and one of the vehicles matched the description in the report. The officer made contact with the reporting party and took a statement, and the reporting party directed the officer to the location of the suspect's vehicle. Officer Robinson identified the driver of the suspected vehicle as Boyer, and

---

[2](...continued)
sections of the brief provide the necessary information to identify the party's argument.").

[3]     Miranda v. Arizona, 384 U.S. 436 (1966).

asked for her "license, registration, and proof of insurance." Boyer began looking for her license and had a difficult time locating it. Officer Robinson "witnessed [Boyer] pass[] her Hawaii State driver's license" and offered assistance in locating her license. Boyer declined any assistance and Officer Robinson asked Boyer to "exit the vehicle" twice, which Boyer "disregarded." Officer Robinson then "opened the door and assisted her out of the vehicle." Officer Robinson observed that Boyer's eyes were "glassy" and that she had a "slight smell of [an] intoxicant on her breath."

Officer Robinson testified that he then administered a Standardized Field Sobriety Test (**SFST**) on Boyer. Prior to the SFST, Officer Robinson asked medical rule-out (**MRO**) questions, including whether Boyer was "under the care of a doctor or dentist"; had "physical defects or speech impediments"; was "epileptic or diabetic"; taking "any type of medication"; or was "blind" or had an "artificial eye." In response to whether she was under the care of a doctor or dentist, diabetic or epileptic, and taking any medication, Boyer responded that she was under the care of a doctor, was epileptic, and was on diazepam[4] for her related symptoms.

Upon completion of the SFST, Officer Robinson determined that he had probable cause to place Boyer under arrest for OVUII. During the encounter, Officer Robinson never advised Boyer of her Miranda rights.

The District Court denied the Motion to Suppress, ruling as follows:

> The Court will find that the Officer had specific articulable facts, taken together with rational inferences from those facts to create a reasonable suspicion [that Boyer] had been or was about to be involved in criminal conduct. Officer Robinson received a report from police dispatch of a reckless driver northbound on Alii Drive, public road, street or highway. That the reporting driver or

---

[4] "Diazepam" is a "tranquilizer . . . used . . . to relieve anxiety and tension and as a muscle relaxant." Diazepam, Merriam-Webster, https://www.merriam-webster.com/dictionary/diazepam (last visited Apr. 27, 2023).

3

> reporting party observed erratic driving and described the vehicle. . . .
>
> The Officer drove to the reported area and observed two vehicles, observed [Boyer] in one vehicle with the engine on and the motor running. From contacting the reporting party he then contacted [Boyer] and asked for driver's license, insurance, and registration. He observed [that Boyer was] unable to locate those documents, specifically a driver's license even though he saw the driver's license in . . . [Boyer]'s wallet and she fail [sic] to -- she was unable to retrieve it for him.
>
> He asked her to exit the vehicle. Upon seeing that she had glassy eyes and had a slight smell of intoxicating liquors on her breath, conducted the field sobriety tests and observed clues which indicated a suspicion of intoxication on all of the NHTSA [(National Highway and Traffic Safety Administration)] tests. . . .
>
> Upon arresting . . . [Boyer] he had facts and circumstances within his knowledge and which were reasonably trustworthy and were sufficient to warrant a person of -- person of reasonable caution to believe that the offense was committed.
>
> So the Court will deny the Motion to Suppress the arrest and evidence emanating from the arrest.

**Bench trial**

At the February 9, 2021 bench trial, when the District Court asked if the State was ready to proceed, the State indicated that it was prepared to proceed with Officer Robinson's testimony and would be asking for a "continuance in part for the testimony of Petra Reinhardt [(**Reinhardt**)]," who initially observed Boyer's operation of the vehicle. The defense did not object. The District Court commenced trial with Officer Robinson's testimony.

Officer Robinson testified that on April 10, 2020, he received a report of a "reckless driver." Upon arriving to the location of the reported reckless driver, Officer Robinson spoke to the reporting party, Reinhardt, who pointed out the alleged reckless driver in the vehicle to the officer. Officer Robinson observed the vehicle in a "parking space [,] parked and running" with Boyer as the driver. Officer Robinson approached the vehicle and asked for Boyer's driver's license, proof of

insurance, and vehicle registration, during which Boyer "[h]ad to be reminded several times of what she was looking for." Officer Robinson noticed that as Boyer looked through her purse for her driver's license, she "pass[ed] it several times." Officer Robinson noticed that Boyer had a "slight smell of an intoxicant emitting from her breath and body," and her eyes appeared to be "glassy." Officer Robinson requested that Boyer exit the vehicle, but after Boyer did not respond, Officer Robinson "opened her vehicle door and gently assisted her out and informed her that [he would] like to perform SFSTs on her," to which she agreed. Officer Robinson asked Boyer the MRO questions, to which Boyer responded that she was "epileptic and that she was currently prescribed diazepine [sic]." Officer Robinson then "continued on with the SFSTs," which consisted of the HGN, Walk and Turn, and One Leg Stand tests. Officer Robinson testified about the procedure of the tests, what he looked for, and that he observed "clues" for intoxication from each test. Boyer related she understood the instructions for the HGN, Walk and Turn, and One Leg Stand, when each test was explained. After the SFST, Officer Robinson arrested Boyer for OVUII.

Following Officer Robinson's testimony, the State orally moved for a continuance of trial and represented that the State had subpoenaed Reinhardt to appear at trial that day, but excused her after it was notified by Reinhardt the day before that she was a health care worker who was receiving a second dose of the Covid-19 vaccination the morning of trial. While Boyer had not initially objected to the District Court commencing trial without Reinhardt, Boyer objected at this point, arguing that a continuance would violate "the spirit" of Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 48. The District Court found that there was a "meaningful commencement" of trial and granted a continuance to May 11, 2021.

At the continued trial on May 11, 2021, Reinhardt testified that on April 10, 2020, she was driving behind Boyer's vehicle; she observed the vehicle swerve into the oncoming lane,

run through two stop signs, and stop in the middle of an intersection.  She called 911, followed Boyer's car until it parked, and waited until Officer Robinson arrived.

At the end of trial, the District Court found Boyer guilty of OVUII, citing Boyer's driving, the smell of an intoxicant from Boyer's breath, "glassy eyes," "difficulty" producing her driver's license, and performance on the SFST.[5]

---

[5]    The District Court explained its verdict of guilty as follows:

THE COURT: Okay.  All right.  Taking the, um, evidence presented at the trial the Court will find that the State has proven beyond a reasonable doubt that [Boyer] did operate, uh, or control a -- pardon me, operate or assume actual physical control of a vehicle while under influence of alcohol in an amount sufficient to impair [Boyer]'s normal mental faculties or ability to care for her person and guard against casualty.

And the Court relies first of all upon the testimony of, um, Petra Reinhardt who observed the driving behavior, reported it and followed [Boyer] to the Kona Reef.  Um, there's no indication that the person who she -- pardon, the driver of the vehicle that she followed was not in the vehicle when Officer Robinson appeared.

Officer Robinson, uh, reported that [Boyer] was the driver in the motor vehicle.  Um, had indicated that he smelled a slight smell of intoxicant on her breath.  He was trained and certified to perform standardized field sobriety tests and he did so.

He also testified that Miss, um, Boyer had a difficult time, um, responding to his initial inquiry for her driver's license and -- and/or ID, um, and observed her to have glassy eyes and the smell of intoxicant.

He testified that he performed the field sobriety tests according to his training and that he observed clues to indicate or suggest a level of impairment including the horizontal gaze nystagmus test, the walk-and-turn test and the one-leg stand, and he saw, um, clues in each of those tests.

Um, he observed, um, unequal tracking when he performed the HGN test upon the defendant, um, and he found two clues of impairment in the walk-and-turn test and that, uh, she began the test before he completed his instructions twice.

She moved her foot to the left to regain balance, and she missed all heel-to-toe tests -- I mean, uh, steps. She was not -- she did not perform

(continued...)

This appeal followed.

    **(1)** Boyer argues that because she was never advised of her <u>Miranda</u> rights when Officer Robinson approached her, her "statements," including her responses to the MRO questions and whether she understood the instructions to the SFST,[6] were the product of a custodial interrogation and should have been suppressed.  Boyer argues that when Officer Robinson approached her vehicle, she was in "custody" when Officer Robinson removed her from her vehicle, as she "could not get back in her vehicle and leave[,]" and "had no choice but to answer Officer Robinson's questions."  Boyer claims the MRO questions constituted "interrogation."  Boyer also argues that because Boyer's responses to the MRO questions were obtained in violation of her <u>Miranda</u> rights, "evidence of Boyer's actions during the SFST tests should also have been suppressed as the 'fruit of the poisonous tree' of the prior unlawfully obtained statements."

    The State argues that Boyer was subjected to a "temporary detainment," and viewed under the "totality of circumstances," Boyer was "not in custody at the time of the medical rule-out questions for purposes of <u>Miranda</u>."  The State asserts that the information provided by Reinhardt "provided

---

[5](...continued)
> the test on the line, miscounted her steps, made an improper turn and continually raised her arm from side to side. So he saw eight clues in the walk-and-turn test.
>
>     And in the one-leg stand test he observed four clues, um, in that she, uh, moved her hands to maintain her balance during his instructions, swayed, uh, slightly, placed her hands in her pockets, initially lifted her left foot and started counting and raised her hands in trying to maintain her balance. Uh, based upon the evidence the Court will find [Boyer] guilty of the offense.

[6]    The alleged error regarding admission of Boyer's understanding of the instruction for each type of SFST is waived, because this evidence was never introduced at the suppression hearing or objected to at trial.  <u>See</u> <u>State v. Hoglund</u>, 71 Haw. 147, 150, 785 P.2d 1311, 1313 (1990) (citation omitted) ("Generally, the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal.").

reasonable suspicion to justify the investigative stop of [Boyer][.]"

Questions of constitutional law, such as the District Court's ruling on the motion to suppress, are reviewed "de novo to determine whether the ruling was 'right' or 'wrong.'" State v. Manion, 151 Hawaiʻi 267, 271-72, 511 P.3d 766, 770-71 (2022) (quoting State v. Lee, 149 Hawaiʻi 45, 49, 481 P.3d 52, 56 (2021)).

Miranda warnings are required when a defendant is (1) in "custody" and (2) under "interrogation[.]" State v. Ah Loo, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (citation omitted). "'[C]ustodial interrogation' . . . consists of 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of their freedom of action in any significant way.'" State v. Hewitt, 153 Hawaiʻi 33, 43, 526 P.3d 558, 568 (2023) (internal brackets omitted) (quoting State v. Wallace, 105 Hawaiʻi 131, 137, 94 P.3d 1275, 1281 (2004)). The Hewitt court reaffirmed the State v. Ketchum test to determine whether a person is in custody:

> [A] person is "in custody" for purposes of article I, section 10 of the Hawaiʻi Constitution if an objective assessment of the totality of the circumstances reflects either (1) that the person has become impliedly accused of committing a crime because the questions of the police have become sustained and coercive, such that they are no longer reasonably designed briefly to confirm or dispel their reasonable suspicion or (2) that the point of arrest has arrived because either (a) probable cause to arrest has developed or (b) the police have subjected the person to an unlawful *de facto* arrest without probable cause to do so.

Id. at 36, 526 P.3d at 551 (emphasis omitted) (quoting Ketchum, 97 Hawaiʻi 107, 126, 34 P.3d 1006, 1025 (2001)). Short of probable cause, the Hewitt court explained that the "objectively appraised" "totality of the circumstances" includes: "the place and time of the interrogation, the length of the interrogation, the nature of the questions asked, the conduct of the police, and all other relevant circumstances." 153 Hawaiʻi at 37, 526 P.3d at 562 (citation and internal quotation marks omitted). In

8

Ketchum, the supreme court explained that:

> Moreover, while no single factor, in itself, is dispositive as to when a temporary investigative detention has morphed into an arrest, the potential attributes of "arrest" clearly include such circumstances as handcuffing, leading the detainee to a different location, subjecting him or her to booking procedures, ordering his or her compliance with an officer's directives, using force, or displaying a show of authority beyond that inherent in the mere presence of a police officer, as well as any other event or condition that betokens a significant deprivation of freedom, "such that [an] innocent person could reasonably have believed that he [or she] was not free to go and that he [or she] was being taken into custody indefinitely," . . . .

97 Hawai'i at 125, 34 P.3d at 1024 (alterations in original) (citations omitted).

Here, the parties disagree as to what point, if any, Officer Robinson's investigative detention of Boyer became custodial in nature, requiring Miranda warnings. The District Court made no specific determination or findings regarding whether and when Boyer was interrogated or was in custody for Miranda purposes, and ruled that probable cause was established after the officer conducted the SFST. Our review of the record of the suppression hearing reflects, *inter alia*, that after Boyer "disregarded" two requests to exit her vehicle, on the third time, Officer Robinson "opened the door and assisted her out of the vehicle." Thus, an objective assessment of the totality of the circumstances elicited at the suppression hearing indicates that Officer Robinson showed "authority beyond that inherent in the mere presence of a police officer," when he opened the door and removed Boyer from her vehicle after she failed to comply with his requests to exit the vehicle. See Ketchum, 97 Hawai'i at 125, 34 P.3d at 1024. At this point, Boyer was deprived of her "freedom of action in a[] significant way." Hewitt, 153 Hawai'i at 43, 526 P.3d at 568 (brackets added) (citation omitted). We conclude that Boyer was in custody for Miranda purposes, and the MRO questions that followed constituted interrogation, and thus were inadmissible at trial. See State v.

9

Skapinok, 151 Hawaiʻi 170, 185, 510 P.3d 599, 614 (2022) (citation omitted) (holding that "all of the medical rule-out questions are interrogation" because "[a]lthough the 'incriminating inference' may be indirect, the questions nevertheless adduce evidence to establish that intoxication caused any poor performance on the SFST.").[7]

Although the MRO responses were inadmissible, we conclude that Boyer's SFST performance was nevertheless admissible at trial and not subject to suppression, because performance on the SFST is not "the fruit of the poisonous tree."

> Although they immediately preceded the SFST in time, the medical rule-out questions did not give the officers information that led them to search for evidence of intoxication, nor did the medical rule-out questions pique their suspicions such that their investigation was directed towards discovering evidence of intoxication.

Id. at 186-87, 510 P.3d at 615-16 (internal quotation marks and brackets omitted) (quoting Manion, 151 Hawaiʻi at 273, 511 P.3d at 772).

Here, as in Skapinok, the officer had already set out to administer the SFST before he asked Boyer the MRO questions. Officer Robinson did not "'exploit the illegality by continuing to gather evidence that [he] had already set out to gather.'" Id. (citation omitted). We conclude that the District Court did

---

[7]     In Skapinok, the officer asked the following MRO questions:

i. Do you have any physical defects or speech impediments?

ii. Are you taking any medications?

iii. Are you under the care of a doctor or dentist for anything?

iv. Are you under the care of an eye doctor?

iv. Do you have an artificial or glass eye?

v. Are you epileptic or diabetic?

vi. Are you blind in either eye?

151 Hawaiʻi at 173-74, 510 P.3d at 602-03. According to the record of the suppression hearing, the questions that Officer Robinson asked Boyer are identical to the MRO questions in Skapinok.

not err in denying the suppression of Boyer's performance on the SFST, and this evidence was admissible at trial.  See id. at 186-87, 510 P.3d at 615-16; Manion, 151 Hawaiʻi at 273, 511 P.3d at 772.

"The admission of illegally obtained evidence in a criminal trial following the erroneous denial of a motion to suppress is subject to the harmless error rule."  State v. Apo, 82 Hawaiʻi 394, 403, 922 P.2d 1007, 1016 (App. 1996) (citation omitted).  "The erroneous admission of evidence is not harmless when there is a reasonable possibility that the error might have contributed to the conviction."  State v. Baker, 147 Hawaiʻi 413, 435, 465 P.3d 860, 882 (2020) (citing State v. McCrory, 104 Hawaiʻi 203, 210, 87 P.3d 275, 282 (2004)).  Boyer presented no argument whether the admission of evidence she contends was inadmissible at trial, was not harmless.

Here, the trial record reflects that minimal evidence of Boyer's MRO responses was presented.[8]  In finding Boyer

---

[8]     The trial transcript reflects the following:

    Q. [(BY STATE)] Did you ask her the six medical rule out questions?

    A. [(BY OFFICER ROBINSON)] Yes, ma'am.

    Q.  Is that -- is that something you do prior to administering the field sobriety tests every time you're about to perform them?

    A.  Yes, ma'am.

    Q.  Why is that?

    A.  In order to rule out certain issues that may be present.

    Q.  And what type of issues could those possibly be?

    A.  Head injury, or medical issues that may affect the results of the testing.

    Q.  Okay.  Is it also a way to ascertain whether or not it would be safe to perform the test?

    A.  Yes, ma'am.

    Q.  What are the six questions that you asked
                                    (continued...)

11

guilty, the District Court did not mention the MRO responses, and stated that it relied on Reinhardt's testimony describing Boyer's driving;[9] Officer Robinson's testimony of the physical indicia of intoxication Boyer displayed, such as "a slight smell of [an] intoxicant on [Boyer's] breath" and "glassy" eyes; Boyer's difficulty in retrieving her license and responding to his requests; and Boyer's poor performance on each of the three types of SFST.  The record does not reflect that the District Court relied on the inadmissible evidence of the MRO responses in finding Boyer guilty.  We conclude that the admission of the MRO responses was harmless beyond a reasonable doubt because there was no reasonable possibility that this evidence might have contributed to Boyer's conviction.  See Baker, 147 Hawaiʻi at 435, 465 P.3d at 882.

**(2)** Boyer argues that while "the State asked that Boyer's trial begin before the end of February 2021 in order to avoid violating HRPP Rule 48[,]" and the trial did commence February 9, 2021, "the commencement was not 'meaningful,'" citing

---

[8](...continued)
Miss Boyer?

    A.  Do you have any physical defects or speech impediments.  Are you currently under the care of a doctor or dentist.  Are you epileptic or diabetic.  Are you taking any medication.  Are you under the care of an eye doctor.  Or are you blind in either eye or have an artificial eye.

    Q.  Did she answer any affirmative to any of those questions?

    A.  She did.

    Q.  What did she say?

    A.  She related that she as epileptic and that she was currently prescribed diazepine [sic].

    Q.  And that was for the -- for epilepsy?

    A.  Yes.

[9]    While driving behind Boyer's vehicle, Reinhardt testified to observing Boyer swerve into the oncoming lane, run through two stop signs and stop in the middle of the intersection.

State v. Alkire, 148 Hawaiʻi 73, 468 P.3d 87 (2020).[10] This contention is without merit.

"A motion for continuance is addressed to the sound discretion of the trial court, and the court's ruling will not be disturbed on appeal absent a showing of abuse of that discretion." State v. Williander, 142 Hawaiʻi 155, 162, 415 P.3d 897, 904 (2018) (internal quotation marks and citations omitted). HRPP Rule 48 requires that the "the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months[.]"

Here, the District Court held that the State made a "meaningful commencement" of trial, as "Officer Robinson gave direct testimony and was adequately cross-examined[.]" While the parties and the District Court applied an HRPP Rule 48 analysis below and on appeal, there was no motion to dismiss made pursuant to HRPP Rule 48. The record reflects that at the outset of the February 9, 2021 trial, the State informed the District Court that it was prepared to proceed with Officer Robinson's testimony, and that it would "be asking for a continuance in part for the testimony of" Reinhardt.[11] Boyer did not object, and trial commenced with Officer Robinson's testimony. After the officer's testimony was completed, the State moved to continue trial for Reinhardt's testimony, to which Boyer objected. The State responded that this was the State's first request for a continuance, and that the defense had also had a previous continuance for the Motion to Suppress, as follows:

> [THE COURT]:  So is the State asking for a continuance now?

---

[10]    In Alkire, the Hawaiʻi Supreme Court explained that HRPP Rule 48 "requires a 'meaningful' commencement," and that commencement of trial is "meaningful" when a "trial court has 'reasonably' committed its resources to the trial, which also requires that the parties be ready to proceed[.]"  148 Hawaiʻi at 87, 468 P.3d at 101 (citation omitted).

[11]    The State informed the District Court that it would be asking for a continuance as follows: "State is prepared to proceed, Your Honor, with Officer Patrick Robinson's testimony.  We will be asking for a continuance in part for the testimony of Petra Reinhardt who observed the initial operation of the vehicle."  There was no objection by Boyer at this point.

[THE STATE]: Yes, Your Honor.  We -- at this time we'd be making an oral motion to continue for the testimony of Petra Reinhardt.  Just by way of explanation, she was subpoenaed for today.  I spoke to her yesterday.  She is a health care worker at West Hawaii Community Health Center and had her second dose of the covid vaccination scheduled for this morning.  So based on that I excused her from her subpoena just based on that explanation.  So I would ask for a continuance for her testimony.

[THE COURT]:  Any objection?

[DEFENSE COUNSEL]:  Yes, Your Honor.  <u>We'd be objecting to the State's motion to continue trial</u>.  Miss Boyer's been present all of her court dates.  She's present for the Motion to Suppress.  She's been present and ready to proceed with trial this morning as evidenced by us proceeding to trial.  Although there may be a reason given for the witness being unavailable, the trial's been started.  <u>Allowing us</u> to continue with just one witness while -- or <u>to start with one witness while continuing for the others</u> we believe would violate one of the more recent cases that came down about the court committing substantial resources to trial, starting with one witness and continuing them along <u>would violate the spirit of both Rule 48 and then her Constitutional right to a speedy trial under the U.S. and Hawaii Constitutions</u>, which she maintains at this time.

[THE STATE]:  Your Honor, I would just note for the record that <u>this is the State's first request for a continuance.  I believe Defense had a previous continuance on their Motion to Suppress</u>.

THE COURT:  Okay. So upon review of the *Alkire* case I believe we had made a meaningful commencement of the trial.  Officer Robinson gave direct testimony and was adequately cross-examined by Defense Counsel.  So I think <u>we afforded [Boyer] her right to a speedy trial and that a continuance to allow the testimony of percipient witness would not offend the [Boyer]'s speedy trial right</u>.

So we'll continue in the normal course.

(Emphases added.)

The record reflects that Boyer did not make a ***motion to dismiss*** under HRPP Rule 48 or based on a constitutional right to a speedy trial.  The record contains no timeline of pertinent dates, calculations, exclusions, or findings pertinent to an application of Rule 48 or speedy trial analysis.  Rather, Boyer objected to the State's first request for a continuance due to unavailability of a material witness, based on the "spirit of

14

both Rule 48" and "constitutional right to a speedy trial[.]" The unavailability of Reinhardt, a health care worker, due to a second Covid-19 vaccination scheduled for the day of trial, constitutes good cause to grant a "first request" to continue trial. The District Court did not abuse its discretion in granting the State's continuance of trial on this record. See Williander, 142 Hawaiʻi at 162, 415 P.3d at 904.

(3) Boyer argues that because the State "did not offer Officer Robinson as an expert or present evidence to establish the relationship of 'clues' of the HGN test and Boyer's degree of intoxication or impairment," the District Court erred in considering the HGN test "clues" as "substantive evidence of impairment." Relying on a study and Arizona cases from a legal journal presented for the first time on appeal, Boyer argues, inter alia, that "[c]oncerns with the accuracy of HGN results include false positives."

Boyer did not object to,[12] or raise any of the arguments she raises on appeal, during Officer Robinson's testimony regarding the HGN test, or during the District Court's finding of guilt. This contention of error is waived. See Hoglund, 71 Haw. at 150, 785 P.2d at 1313.

For the foregoing reasons, the May 11, 2021 Judgment and Notice of Entry of Judgment, entered in the District Court of the Third Circuit, is affirmed.

DATED: Honolulu, Hawaiʻi, June 9, 2023.

On the briefs:

Henry P. Ting,
Deputy Public Defender,
for Defendant-Appellant.

Stephen L. Frye,
Deputy Prosecuting Attorney,
County of Hawaiʻi,
for Plaintiff-Appellee.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Karen T. Nakasone
Associate Judge

---

[12] The record reflects that Boyer never lodged any objections during Officer Robinson's trial testimony regarding the HGN test.