**Electronically Filed
Supreme Court
SCWC-17-0000638
25-JUN-2020
08:01 AM**

IN THE SUPREME COURT OF THE STATE OF HAWAI'I

---o0o---

STATE OF HAWAI'I,
Respondent/Plaintiff-Appellee,

vs.

LISA E. ALKIRE,
Petitioner/Defendant-Appellant.

SCWC-17-0000638

CERTIORARI TO THE INTERMEDIATE COURT OF APPEALS
(CAAP-17-0000638; 1DTA-16-03825)

JUNE 25, 2020

McKENNA, POLLACK, AND WILSON, JJ., WITH
NAKAYAMA, J., DISSENTING AS TO SECTION IV.A.,
WITH WHOM RECKTENWALD, C.J., JOINS

OPINION OF THE COURT BY McKENNA, J.

## I.  Introduction

This certiorari proceeding arises out of Lisa E. Alkire's ("Alkire") conviction for the offense of operating a vehicle under the influence of an intoxicant ("OVUII") in violation of

Hawai'i Revised Statutes ("HRS") § 291E-61(a)(1) (Supp. 2014) on Likelike Highway in the early morning hours of October 15, 2016.

Alkire raises four questions in her application for writ of certiorari, which challenges the Intermediate Court of Appeals' ("ICA") January 24, 2019 summary disposition order ("SDO"). The ICA's SDO affirmed the District Court of the First Circuit's ("district court") August 30, 2017 judgment.[1]

The four questions raised on certiorari are:

> I. As a matter of first impression, did the ICA gravely err in finding that the Tachibana admonishment was sufficient where Petitioner was not informed of her right to testify in her consolidated suppression hearing without that testimony being used to determine guilt or innocence and/or where the court specifically declined to inform Petitioner of her right to remain silent?
>
> II. As a matter of first impression, did the ICA gravely err in rejecting Petitioner's HRPP, Rule 48 and/or constitutional speedy trial challenges, where the trial "commenced" with one state witness but was subsequently continued for eight months at no fault of Petitioner?
>
> III. Did the ICA gravely err in holding that HRPP Rule 16 usurps United States Supreme Court precedent that requires individual prosecutors to obtain and disclose impeachment materials rather than merely relying on representations of the police to determine whether and what materials should be disclosed to Defendants?
>
> IV. Did the ICA gravely err in finding that discovery, requested for its potential exculpatory value, was not material because the evidence of guilt was "overwhelming" and/or in affirming the conviction where Ms. Alkire was deprived of an opportunity to establish an appropriate record as to the existence of the video?

---

[1] The Honorable James H. Ashford presided.

The first question on certiorari was resolved through our opinion in State v. Chang, 144 Hawaiʻi 535, 445 P.3d 116 (2019).[2]

With respect to the second question on certiorari, we adopt the California Supreme Court's reasoning in Rhinehart v. Municipal Court, 677 P.2d 1206, 1211-12 (Cal. 1984), and hold that, in order to effectuate its intent, Hawaiʻi Rules of Penal Procedure ("HRPP") Rule 48 (2000) requires a "meaningful" commencement of trial. A trial is "meaningfully" commenced when a trial court reasonably commits its resources to the trial. As this is a "new rule," it will only apply prospectively to events occurring after publication of this decision, i.e., to trials that commence after the date of this opinion.[3]

With respect to the third question on certiorari, we hold that, under the circumstances of this case, the prosecutor was not required to personally review files of the testifying police officers.

As to the fourth question on certiorari, we hold that because the video recording showing Alkire at the police station

_____

[2]    In Chang, we noted that because the defendant had the right to testify for the purpose of his motion to suppress without having that testimony used against him at trial, it was essential that the defendant be informed of those rights in order to ensure that his decision on whether to testify at the suppression hearing was knowingly and intelligently made. 144 Hawaiʻi at 545, 445 P.3d at 126. Overruling State v. Texeira, 62 Haw. 44, 609 P.2d 131 (1980), we also prospectively held that trial courts could no longer consolidate a motion to suppress hearing with a trial. 144 Hawaiʻi at 546, 445 P.3d at 127. We therefore need not further address this issue.

[3]    See also infra note 8.

after her arrest was material to Alkire's defense and her request was reasonable, the district court abused its discretion in denying her motion to compel. We set out additional parameters the district court must consider. Although the district court may not reach this issue, we also hold that the permissive adverse inference rule, which allows a trier of fact to draw an adverse inference that lost or destroyed evidence was unfavorable to the spoliator, also applies in criminal cases.

Accordingly, we vacate the ICA's February 25, 2019 judgment on appeal, which affirmed the district court's August 30, 2017 judgment, and we remand the case to the district court for further proceedings consistent with this opinion.

## II. Background

### A. Arrest, request to preserve evidence, and charge

In the early morning of October 15, 2016, Alkire was stopped while driving northbound on Likelike Highway after a Honolulu Police Department ("HPD") officer ("patrol officer") observed her swerve from the traffic lane into the shoulder lane three times. Alkire was later placed under arrest for OVUII and transported to the police station.

On October 20, 2016, Alkire's counsel faxed a five-page, single-spaced letter ("request to preserve") to the HPD Central Receiving Division ("Central Receiving"). In the letter,

4

Alkire's counsel specifically requested that the following information be preserved:

> [A]ny and all video or audio recordings that may contain evidence of this case . . . (or records of such footage) from any video, audio or traffic cameras maintained, operated, controlled, leased, or accessible by the . . . Honolulu Police Department, . . . Department of the Prosecuting Attorney and/or any other government entity or sub-department, semi-autonomous or any other department, that may pertain to this incident . . . . This request also specifically includes, but is not limited to, any and all recordings, captured in whatever manner, of this Defendant by police department employees or contractors whether at the police station, from any in-car recording devices, and/or video or audio recording devices.

The request listed Alkire's identifying information, the date of arrest, citation number, and state ID booking number. Alkire's counsel also emailed the request to preserve to the Department of the Prosecuting Attorney for the City and County of Honolulu ("prosecutor's office"). The following day, Alkire's counsel faxed to Central Receiving an addendum to the October 20, 2016 request to preserve, which specifically requested that the video from the Kalihi Police Station be preserved. Alkire's counsel also emailed the addendum to the prosecutor's office and mailed physical copies of both the request to preserve and the addendum to HPD Headquarters ("Headquarters"), Central Receiving, and the prosecutor's office.

On November 1, 2016, the State filed a complaint charging Alkire with one count of OVUII in violation of HRS § 291E-

61(a)(1) and/or (a)(3).[4]

## B.   District court proceedings relevant to issues on certiorari

### 1.   Motion to compel officer files

On December 5, 2016, Alkire filed a motion to compel files of the police officers the State intended to call as witnesses ("motion to compel officer files").  Alkire requested that (1) the State produce the personnel files of the officers involved in Alkire's case (and any other documentation regarding the officers' misconduct); and (2) that the prosecutor "be required to review the files of its witnesses to determine whether impeachment materials exist and not shift that burden to police or non-lawyer bureaucrats," as purportedly required by Brady v. Maryland, 373 U.S. 83 (1963) (suppression of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the good faith or bad faith of the prosecution), and United States v. Bagley,

---

[4]   HRS § 291E-61(a) (Supp. 2014) provides in relevant part,

> (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
> (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
>
> . . . .
>
> (3)   With .08 or more grams of alcohol per two hundred ten liters of breath[.]

473 U.S. 667 (1985) (a prosecutor's failure to disclose evidence favorable to the accused constitutes reversible error when the suppressed evidence might have affected the outcome of the trial).

### 2. Motion to compel video recording

On January 6, 2017, Alkire filed a motion to compel production of the video recording showing her at the police station after her arrest ("motion to compel video recording"). Alkire indicated she had been under surveillance at the Kalihi Police Station after her arrest, and that she had sent the request to preserve a few days after her arrest and "well within the time that the video footage was maintained" to the HPD and to the prosecutor's office.

Alkire attached to her motion the request to preserve and the addendum, which had been sent to Headquarters, Central Receiving, and the prosecutor's office. Alkire also attached a transcript of statements by HPD Police Sergeant Barry Tong ("Sgt. Tong") at one of defense counsel's previous hearings involving another OVUII defendant. Sgt. Tong, who worked at Central Receiving, had explained HPD practice for retaining video surveillance footage:

> SGT. TONG: In response to [defense counsel's] request for video surveillance from our detention facility on the date that [redacted] was arrested, unless we actually had a subpoena of some sort within 20 to 25 days -- that is usually when the -- the video recording is written over.
> THE COURT: Okay.

> SGT. TONG: So it's not destroyed; it's just written over.
> THE COURT: Okay.  So I think what you're saying -- tell me if I'm correct.
> You're saying that the normal course of events is after 20 to 25 days existing material is re -- is recorded over?
> SGT. TONG: Correct.  With our current system, yes, sir.

Additionally, Sgt. Tong had testified that future requests to preserve evidence should be sent to the Central Receiving and that either he or one of his officers "will go through its proper channels . . . to preserve the information."

In addition, Alkire attached (1) a copy of the HPD policy requiring video monitoring of all detainees in holding cells and (2) a letter from Sgt. Tong regarding a discovery request for another case, stating that (a) video recordings from the District 5 Kalihi Police Station "exist[s] for a period of 30 days after the day and time it was recorded;" and (b) "cameras at the District 5 Kalihi Police Station are positioned to get maximum viewing angle of the exterior of the police station and all access points to the station[]" and also provide "surveillance viewing of the adult and juvenile processing and cellblock areas."

Alkire also represented that, as of January 6, 2017, the State had not responded to her request, and that the video recording had not been provided in the State's January 5, 2017 disclosure.  Alkire argued that her constitutional rights entitled her to access this video footage.  Alkire argued that

this video footage was "an 'essential ingredient' to demonstrate to [the district court] the Defendant's version of the facts, i.e., that Defendant was not impaired and that the purported indicia of impairment simply were not present."

Alkire further contended that even if her constitutional rights were not implicated, under HRPP Rule 16 (2012),[5] her

---

[5]     HRPP Rule 16 provides in relevant part:

> **(a) Applicability.** Subject to subsection (d) of this rule, discovery under this rule may be obtained in and is limited to cases in which the defendant is charged with a felony, and may commence upon the filing in circuit court of an indictment, an information, or a complaint.
>
> **(b)   Disclosure by the prosecution.**
>
> > **(1) Disclosure of matters within prosecution's possession.**  The prosecutor shall disclose to the defendant or the defendant's attorney the following material and information within the prosecutor's possession or control:
> >
> > . . . .
> >
> > > (vii) any material or information which tends to negate the guilt of the defendant as to the offense charged or would tend to reduce the defendant's punishment therefor.
> >
> > **(2) Disclosure of matters not within prosecution's possession.**  Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use diligent good faith efforts to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.
> >
> > . . . .

(continued . . .)

request for the video footage was both "reasonable" and "material." Finally, Alkire argued that if the video footage had been destroyed despite her request that the footage be preserved, her case should be dismissed.

On January 9, 2017, the State filed a memorandum in opposition. The State argued that pursuant to HRPP Rule 16, discovery in misdemeanor cases is allowed "only if defendant makes a showing of materiality and if defendant's request is reasonable." The State argued that Alkire was requesting the video recordings "with no good faith basis" and that her request was in the nature of a "fishing expedition." The State contended that any surveillance video would not be material because Alkire arrived at the Kalihi Police Station nearly forty minutes after the initial car stop and it was speculative that the video would show the signs and symptoms of possible impairment that the officers had observed earlier.

---

(. . . continued)
**(d) Discretionary Disclosure.** Upon a showing of materiality and if the request is reasonable, the court in its discretion may require disclosure as provided for in this Rule 16 in cases other than those in which the defendant is charged with a felony, but not in cases involving violations.

### 3.    January 10, 2017 proceedings

### a.    Pretrial matters

On the afternoon of January 10, 2017, Alkire's case was called, and before starting trial, the district court addressed Alkire's motions to compel officer files and the video recording. The district court asked the State whether it was in possession or control of any potentially exculpatory or sentence-reducing information that had not yet been turned over to the defense. The State responded that it was not.  The State further stated:

> And I can put on the record, Your Honor, that in regards to this matter, we did –- we are not aware of any exculpatory evidence as I've already indicated, however, we also did make affirmative inquiries on –- into both of these officers, both to HPC [Honolulu Police Commission] and HPD, and in each case we were told that there are no records re -- or on either officer.  And from HPC, Your Honor, from the commission we received that response November 30th and from HPD rather we received that response November 28th. So as of that time, Your Honor, not only do we not have any information, but we have made affirmative checks and found nothing to turn over.

At defense counsel's request, the State clarified that it had made standard requests for information pertaining to the witnesses' truth or veracity and argued it therefore met its burden under Brady and its progeny to disclose exculpatory evidence.  The district court then denied Alkire's motion to compel officer files.

With respect to the motion to compel video recording, Alkire argued that, based on HPD policy and Sgt. Tong's testimony, a video should exist and that it was material because

the alleged indicia of impairment should have been observable when Alkire arrived at the Kalihi Police Station. The district court denied this motion also, on the grounds Alkire had not shown that a video recording of her actually existed, or, if it existed, that it was material.

### b. Patrol officer's testimony

After both the State and defense waived opening statements, the State called its first witness, the patrol officer, who testified as follows.

While driving north on Likelike Highway on October 15, 2016, he observed a red Jeep suddenly veer into the right shoulder, veer back into the driving lane, and veer into the right shoulder again. After observing the Jeep veer into the shoulder a third time "just slightly," he decided to stop the vehicle. After approaching Alkire, who was seated in the Jeep while he stood two feet away from it, he smelled a strong odor of alcohol emanating from her.

### c. Trial continuance

Following cross-examination, the patrol officer was excused. The court and the parties briefly went off, then came back on the record. Although the record states Alkire's counsel agreed to continue trial to March 16, 2017, it appears the continuance was due to chronic court congestion.

###     4.     March 16, 2017 proceedings

On March 16, 2017, the State called to the stand the HPD officer who conducted a standardized field sobriety test ("SFST") on Alkire ("SFST officer").  He testified in relevant part as follows.

When he arrived on the scene, the patrol officer told him that Alkire was possibly under the influence of an intoxicant and asked him to administer a SFST.  When the SFST officer approached the vehicle, Alkire was seated in the driver's seat. He observed that "[s]he had some redness and watery –- watery eyes.  And from outside the window, I could smell an odor of an alcoholic-type beverage coming from her person."

Alkire then consented to the SFST.  After it was administered, Alkire was arrested and transported to the Kalihi Police Station.

The district court then interrupted the SFST officer's testimony and asked him to leave the courtroom so he could discuss with counsel how they wished to proceed, considering that the officer was not likely to finish his testimony that day. The district court stated it wanted to give defense counsel some time to cross-examine the SFST officer that day, stating:

> Because by the time we continue this -- because it doesn't
> look like we're going to finish, is my guess, today.  I
> don't want memory to be kicking in if we have another six
> or eight weeks of delay.

Further, the district court stated that it was not allowing the State "to pursue the (a)(3) [violation] if you don't have your necessary evidence today."[6]  Defense counsel then stated that he wanted to get transcripts to finish his cross-examination.

The SFST officer was called back into the courtroom and the State's direct examination continued.  The officer clarified that Alkire's arrest was based on "[his] observations of [Alkire] in the driver's seat, coming out, and then the performance of the standardized field sobriety test[,]" as well as the odor of alcohol coming from her.

Defense counsel then began cross-examination.  After a few questions, the district court interrupted and stated that the trial would be continued to a later date.  Defense counsel requested that the district court allow him "some time . . . to get the transcript" prior to the next day of trial and that, based on his past experience, a six-week continuance would likely not be sufficient.  The State objected, arguing that if defense counsel was "concerned about memory, it's very, very easy to obtain audio of this . . . hearing."  The district court agreed that defense counsel could obtain an audio CD promptly

---

[6]   This was in reference to HRS § 291E-61(a)(3), which prohibits operating a vehicle "[w]ith .08 or more grams of alcohol per two hundred ten liters of breath[.]"  As in Alkire's case, defendants arrested for OVUII after being pulled over are often charged with OVUII under both HRS § 291E-61(a)(1), which prohibits operating a vehicle "[w]hile under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty" as well as HRS § 291E-61(a)(3).  See supra text accompanying note 4.

and noted that "transcripts often take several months," which would only exacerbate potential memory issues. Thus, the district court declined the defense request for a delay to obtain the transcript.

The district court then inquired whether the SFST officer would have any scheduling issues in the next three months. The officer indicated the month of April would not work for him due to a significant personal family issue, and that he probably would not be available until the second half of May or until June. Alkire indicated a preference for an afternoon trial time. The district court stated the first date it would be available would be the afternoon of June 8th, and trial was continued until that date.

### 5. June 8, 2017

On June 8, 2017, the defense and the prosecutor, with her witnesses, appeared for trial. Unbeknownst to the parties, however, the district court had entered an order on May 19, 2017 stating that "[t]his matter, currently scheduled for further trial on June 8, 2017, at 1:30 p.m., is hereby rescheduled for status/no witnesses at 8:30 a.m. on August 2, 2017[.]" On June 23, 2017, another order was filed by the district court, stating that "[f]urther trial of this matter is hereby rescheduled to August 4, 2017 at 8:30 a.m." and "[t]he previously scheduled

15

status/no witnesses at 8:30 a.m. on August 2, 2017, is hereby cancelled."

### 6. Motion to dismiss

On July 21, 2017, Alkire filed a motion to dismiss, claiming the State had violated her constitutional right to a speedy trial and/or HRPP Rule 48.  Alkire argued that "[s]imply 'commencing' trial and continuing the proceedings beyond the time permitted by Rule 48 in the first place allows the State to present one witness and toll Rule 48 in perpetuity without any inclination as to when trial will finally conclude."[7]

Alkire contended that defendants are entitled to a meaningful commencement of trial and that the spirit of HRPP Rule 48 was violated because, although the trial technically "commenced" on January 10, 2017, ten months had passed since her arrest and the trial had not yet concluded.  Alkire argued that even if HRPP Rule 48 was not violated, the ten-month delay from arrest to the August 2017 continued trial date was presumptively prejudicial for speedy trial purposes, citing Barker v. Wingo, 407 U.S. 514, 530 (1972).  Alkire contended that the district court was therefore required to consider the three other Barker

---

[7]     Alkire also argued that "[t]his is an ongoing issue in District Court. Due to the current practices in District Court, when 'commenced' [trials] have been scheduled months later because no other openings are available due to the chronic congestion resulting from these exact practices.  This is exactly what Rule 48 dismissals are designed to prevent.  This case should be dismissed."

factors to determine whether her constitutional rights were violated: (1) reason for the delay; (2) defendant's assertion of her right; and (3) prejudice to the defendant. 407 U.S. at 530. Alkire claimed that all three factors "weigh heavily in favor of dismissal."

In its memorandum in opposition, the State countered that HRPP Rule 48 did not apply because the rule "addresses delays prior to trial." The State also argued that the constitutional right to a speedy trial similarly contemplates only pre-trial delays. The State also argued that the defense had filed several motions.

### 7. August 4, 2017 proceedings

On August 4, 2017, before trial resumed, the district court orally denied Alkire's motion to dismiss. It found that neither HRPP Rule 48 nor Alkire's constitutional rights to a speedy trial were violated. With respect to HRPP Rule 48, the district court stated:

> Completing this trial less than nine months from the date of arraignment is reasonable in my view under the circumstances, particularly given that in this case the defense has filed nine motions of one sort or another, the State has filed one motion of its own, and also given that the defense has formally waived Rule 48 and speedy trial rights in this particular case.
>
> In addition, I would note that certainly at the March 16, 2017 trial, the defense also orally requested a lengthier delay in further trial than I actually allowed. That request was to obtain transcripts. Candidly, I think defense counsel has unclean hands in this matter because of the waiver of time and because of the request for lengthier delays than the court was willing to allow. The point

17

> being the court has tried when it can to bring this case to
> trial and completion sooner rather than later.

The district court then ruled Alkire's constitutional rights to a speedy trial were also not violated because (1) the reasons for the delay were to address numerous motions, the defense waived time, and the judge had temporarily been assigned to another court; (2) Alkire did not specifically assert her speedy trial rights; and (3) Alkire was not prejudiced because there was no significant pretrial incarceration. Additionally, with respect to Alkire's claim of possible prejudice, the district court stated that "if counsel was genuinely concerned about a loss of recollection, it would make no sense to request lengthier than normal delays for -- to obtain transcripts."

After the district court denied the motion to dismiss, the SFST officer was recalled for defense counsel to continue his cross-examination. Defense counsel questioned the officer with respect to his training on conducting SFSTs and whether Alkire was properly instructed in performing her SFST. The officer was then excused.

The district court found Alkire guilty of the OVUII charge based on HRS § 291E-61(a)(1). It found that Alkire

> was under the influence –- influence of alcohol in an
> amount sufficient to impair her ability to care for herself
> and guard against casualty. That is basically evidenced by
> the three swerves so to speak and the quote-unquote indicia.
> So I do not find that she was impaired by alcohol in an
> amount sufficient to impair her normal mental faculties,
> but I do find on the alterna –- alternative ground to guard
> against casualty. I also find that the defendant was at a

> minimum reckless in all instances required to be proven by
> the State.

The district court stated its finding of guilt was based on the police officers' observations of Alkire's driving and other indicia of impairment. The district court indicated that even without considering the results of the SFST, it would have adjudged Alkire guilty. A notice of entry of judgment was entered on August 30, 2017.

## C.   ICA proceedings

Alkire appealed her conviction to the ICA, asserting the four points of error also raised on certiorari. The ICA affirmed Alkire's conviction in a summary disposition order ("SDO"). State v. Alkire, CAAP-17-0000638, 2019 WL 312155 (App. Jan. 24, 2019) (SDO).

With respect to the three remaining issues we address on certiorari, first, the ICA concluded that Alkire's speedy trial rights were not violated. Alkire, SDO at 2. The ICA concluded that HRPP Rule 48 was not violated because Alkire was arrested on October 15, 2016, and trial commenced on January 10, 2017 — within the six months allowed by the rule. Id. As to Alkire's constitutional speedy trial rights under the Sixth Amendment to the United States Constitution, and article I, section 14 of the Hawai'i Constitution, the ICA rejected Alkire's claim that the district court erred by failing to consider the period of time

between arrest and the conclusion of trial.  Alkire, SDO at 2-3.
The ICA reasoned that because only three months elapsed between
the time when Alkire was arrested and the beginning of trial,
the delay was not presumptively prejudicial, and no further
analysis under Barker was required to determine whether Alkire's
constitutional speedy trial rights were preserved.  Alkire, SDO
at 3.

Next, with respect to Alkire's request that the prosecutor
more thoroughly investigate whether impeachment evidence existed,
the ICA concluded that Alkire was urging the ICA to promulgate a
new discovery rule requiring prosecutors to personally review
officers' personnel files for impeachment evidence, which the
ICA declined to impose.  Id.

With respect to the video recording, the ICA concluded that
the district court did not err by denying Alkire's motion to
compel because it did not appear the video footage was material.
Alkire, SDO at 4 (citing Kyles v. Whitley, 514 U.S. 419, 434-35
(1995)).  The ICA so concluded based on its understanding of the
lack of evidence that any video existed at the time of Alkire's
request and its view of the overwhelming evidence of impairment
in support of the conviction.  Id.

The ICA thus affirmed the district court's August 30, 2017
judgment of conviction.

## III. Standards of Review

### A. HRPP Rule 48 dismissal

An appellate court reviews a trial court's decision on a HRPP Rule 48 motion to dismiss under both the "clearly erroneous" and "right/wrong" tests:

> A trial court's findings of fact (FOFs) in deciding an HRPP 48(b) motion to dismiss are subject to the clearly erroneous standard of review. An FOF is clearly erroneous when, despite evidence to support the finding, the appellate court is left with the definite and firm conviction that a mistake has been committed. However, whether those facts fall within HRPP 48(b)'s exclusionary provisions is a question of law, the determination of which is freely reviewable pursuant to the "right/wrong" test.

State v. Samonte, 83 Hawai'i 507, 514, 928 P.2d 1, 8 (1996) (citation omitted).

### B. Constitutional questions

This court reviews questions of constitutional law by exercising our own independent constitutional judgment based on the facts of the case. State v. Phua, 135 Hawai'i 504, 511-12, 353 P.3d 1046, 1053-54 (2015) (quotation marks omitted). Therefore, questions of constitutional law are reviewed under the right/wrong standard. Phua, 135 Hawai'i at 512, 353 P.3d at 1054.

### C. Discovery requests

The scope of discovery is reviewed for an abuse of discretion. State v. Fukusaku, 85 Hawai'i 462, 477-78, 946 P.2d 32, 47-48 (1997). "An abuse of discretion occurs when the

21

decisionmaker exceeds the bounds of reason or disregards rules or principles of law or practice to the substantial detriment of a party." State v. Fukuoka, 141 Hawaiʻi 48, 55, 404 P.3d 314, 321 (2017) (internal quotation marks and citations omitted).

## IV. Discussion

The issues on certiorari for our consideration are:

> II. As a matter of first impression, did the ICA gravely err in rejecting Petitioner's HRPP, Rule 48 and/or constitutional speedy trial challenges, where the trial "commenced" with one state witness but was subsequently continued for eight months at no fault of Petitioner?
>
> III. Did the ICA gravely err in holding that HRPP Rule 16 usurps United States Supreme Court precedent that requires individual prosecutors to obtain and disclose impeachment materials rather than merely relying on representations of the police to determine whether and what materials should be disclosed to Defendants?
>
> IV. Did the ICA gravely err in finding that discovery, requested for its potential exculpatory value, was not material because the evidence of guilt was "overwhelming" and/or in affirming the conviction where Ms. Alkire was deprived of an opportunity to establish an appropriate record as to the existence of the video?

## A.   The interests sought to be protected by HRPP Rule 48 require a "meaningful" commencement of trial

With respect to Alkire's second question on certiorari, we have held that "[u]nder the sixth amendment to the United States Constitution and article I, section 14 of the Hawaiʻi Constitution, an accused is guaranteed the right to a speedy trial in all criminal prosecutions." State v. Lau, 78 Hawaiʻi 54, 62, 890 P.2d 291, 299 (1995). This court applies the four-part test set forth by the United States Supreme Court in Barker, 407 U.S. 514, and adopted in State v. Almeida, 54 Haw. 443, 509 P.2d

22

549 (1973), to determine whether the government has violated a defendant's federal and state constitutional rights to a speedy trial. Lau, 78 Hawai'i at 62, 890 P.2d at 299. These factors are: "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." Id. (citing Barker, 407 U.S. at 533).

The United States Supreme Court indicated in Barker that "[t]he States, of course, are free to prescribe a reasonable period consistent with constitutional standards[.]" 407 U.S. at 523. Many states have such speedy trial rules, and HRPP Rule 48 is our version of a rule so prescribed, which, in Alkire's case, required that her trial "commence" within six months of her arrest:

> **Rule 48. Dismissal**.
>
> . . . .
>
> **(b) By Court.** Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within six months:
>
> (1) from the date of arrest . . . .

Although Alkire's trial started three months after her arrest, Alkire alleges that her speedy trial rights under the federal and state constitutions as well as HRPP Rule 48 were violated because the district court failed to "meaningfully" commence trial. This is because her trial was continued for

months at a time and was not concluded until almost seven months after it began and ten months after her arrest.

Because HRPP Rule 48 "is intended to provide broader protections than the analogous constitutional [speedy trial] guarantee," Fukuoka, 141 Hawai'i at 64, 404 P.3d at 330, we address Alkire's assertion that HRPP Rule 48 requires a "meaningful" commencement of trial.  Alkire urges this court to adopt the California Supreme Court's interpretation of its speedy trial rule.  In Rhinehart, 677 P.2d at 1208, a jury was impaneled on the day before California's speedy trial rule would have been violated, and the judge announced that, due to court congestion, there would be a five or six day delay before evidence would be presented.  The California Supreme Court held that "brought to trial" does not mean when a jury is impaneled, but rather,

> an accused is "brought to trial" within the meaning of [California's speedy trial rule] when a case has been called for trial by a judge who is normally available and ready to try the case to conclusion.  The court must have committed its resources to the trial, and the parties must be ready to proceed and a panel of prospective jurors must be summoned and sworn.

677 P.2d at 1211-12.

The language of HRPP Rule 48 differs from the California rule.  HRPP Rule 48 requires that a trial be "commenced" within a certain time period while the California rule requires that an accused by "brought to trial" within a certain time.  Both rules,

however, are state rules designed "to prescribe a reasonable period consistent with constitutional standards[.]" Barker, 407 U.S. at 523.  Although "separate and distinct from [the] constitutional protection to a speedy trial[,]" State v. Estencion, 63 Haw. 264, 268, 625 P.2d 1040, 1043 (1981), HRPP Rule 48 is intended to ensure an accused a speedy trial. Fukuoka, 141 Hawai'i at 55, 404 P.3d at 321.

Further,

> [s]peedy trial rules are intended to prevent unreasonable delay in the determination of criminal actions that subvert the public good and disgrace the administration of justice. To accomplish this end, HRPP Rule 48(b) requires a court to dismiss the charge upon the defendant's motion if trial is not commenced within 6 months of a relevant triggering date.  The six-month period under HRPP Rule 48 is equivalent to 180 days.  Under HRPP Rule 48(c), there are eight categories of delay that are to be excluded from calculating the time within which trial must commence.

State v. Hernane, 145 Hawai'i 444, 450, 454 P.3d 385, 391 (2019) (internal citations, alterations, and quotation marks omitted). Accordingly, "HRPP Rule 48 operates to 'ensure an accused a speedy trial' and to further 'policy considerations to relieve congestion in the trial court, to promptly process all cases reaching the courts, and to advance the efficiency of the criminal justice process.'"  Fukuoka, 141 Hawai'i at 62-63, 404 P.3d at 328-29 (citations omitted).

Thus, HRPP Rule 48 "is intended to provide broader protections than the analogous constitutional [speedy trial] guarantee," Fukuoka, 141 Hawai'i at 64, 404 P.3d at 330, but also

seeks to effectuate constitutional speedy trial interests, which include the following:

> (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past.

Lau, 78 Hawai'i at 64, 890 P.2d at 301 (quoting Barker, 407 U.S. at 532).

Therefore, we now hold that, in order to effectuate its intent, HRPP Rule 48 requires a "meaningful" commencement of trial. We also hold that a trial is "meaningfully" commenced when a trial court has "reasonably" committed its resources to the trial, which also requires that the parties be ready to proceed, and, if applicable, a panel of prospective jurors summoned and sworn, as held by Rhinehart, 677 P.2d at 1211-12. As this is a "new rule," State v. Kaneaiakala, 145 Hawai'i 231, 235, 450 P.3d 761, 765 (2019), however, it will only apply prospectively to events occurring after publication of this decision, i.e., to trials that commence after the date of this opinion.[8] Thus, this holding does not apply to Alkire's case.[9]

---

[8]    As we stated in Lewi v. State, 145 Hawai'i 333, 346 n.21, 452 P.3d 330, 349 n.21 (2019):

(continued . . .)

26

(. . . continued)

> We recognize that we announce a new rule in this case, and that we are "[f]ree to apply" this new rule "with or without retroactivity." State v. Jess, 117 Hawai'i 381, 401, 184 P.3d 133, 153 (2008) (citation omitted). This court has generally considered three primary alternatives in deciding to what degree a new rule is to have retroactive effect. Id. First, this court may give a new rule "purely prospective effect, which means that the rule is applied neither to the parties in the law-making decision nor to those others against or by whom it might be applied to conduct or events occurring before that decision." Id. (internal quotation marks and citations omitted). Second, this court may give a new rule "limited or 'pipeline' retroactive effect, under which the rule applies to the parties in the decision and all cases that are on direct review or not yet final as of the date of the decision." Id. (citations omitted). Third, this court may give a new rule "full retroactive effect, under which the rule applies both to the parties before the court and to all others by and against whom claims may be pressed." Id. (internal quotation marks and citations omitted). Lastly, this court has recognized a fourth alternative, in which a new rule is given "selective retroactive effect," meaning the court applies the new rule "in the case in which it is pronounced, then return[s] to the old [rule] with respect to all [other cases] arising on facts predating the pronouncement." 117 Hawai'i at 401 n.19, 184 P.3d at 153 n.19. We have declined to apply this fourth alternative, as it "violates the principles of treating similarly situated defendants the same." Id. (citations omitted).
>
> In exercising our discretion in deciding the effect of a new rule, we "weigh the merits and demerits" of retroactive application of the particular rule in light of "(a) the purpose of the newly announced rule, (b) the extent of reliance by law enforcement authorities on the old standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 117 Hawai'i at 401-02, 184 P.3d at 153-54 (internal quotation marks and citations omitted).

The first factor, the purpose of the newly announced rule, would appear to counsel against a purely prospective application of this new rule, as the purpose of the newly announced rule is to protect a defendant's speedy trial rights. On the other hand, the second factor (reliance by law enforcement on the old standards) counsels against a full retroactive application of this new rule, as our trial courts have not been required to consider a "meaningful commencement" standard for HRPP Rule 48 when setting continued trial dates. The third factor (the effect on the administration of justice of the new standards) also counsels against a full retroactive application of this new rule, as HRPP Rule 40 petitions challenging trial commencements based on an alleged lack of "meaningful commencement" could arise.

(continued . . .)

27

**B. Under the circumstances of this case, the prosecutor was not required to personally review the personnel files of the testifying police officers to satisfy <u>Brady</u> obligations**

In her third question on certiorari, Alkire asks whether "HRPP Rule 16 usurps United States Supreme Court precedent that requires individual prosecutors to obtain and disclose impeachment materials rather than merely relying on representations of the police to determine whether and what materials should be disclosed to Defendants."

As noted in Sections II.B.1 and II.B.3, the district court denied Alkire's motion to compel the personnel files of the testifying police officers based on the prosecutor's representation that she had made standard written inquiries to HPC and HPD and had been informed no exculpatory evidence,

---

(. . . continued)
See, e.g., <u>Jess</u>, 117 Hawai'i at 403, 184 P.3d at 155 (concluding that the third factor counseled against full retroactive effect of new rule, because "our courts would be inundated with HRPP Rule 40 (2006) petitions filed by defendants who were sentenced to extended terms from as long ago as 1978[.]").

On balance, based on the second and third factors, we determine that a prospective-only application of the new rule is most appropriate. We anticipate, however, that adoption of this new rule will encourage meaningful trial commencements.

[9] We must therefore also address Alkire's constitutional speedy trial claim. This court applies the four-part test set forth by the United States Supreme Court in <u>Barker</u>, 407 U.S. 514, and adopted in <u>Almeida</u>, 54 Haw. 443, 509 P.2d 549, to determine whether the government has violated a defendant's federal and state constitutional rights to a speedy trial. <u>Lau</u>, 78 Hawai'i at 62, 890 P.2d at 299. These factors are: "(1) length of the delay; (2) reasons for the delay; (3) defendant's assertion of his right to speedy trial; and (4) prejudice to the defendant." <u>Id.</u> (citing <u>Barker</u>, 407 U.S. at 533). We have stated that, unless there is a delay in bringing a defendant that is presumptively prejudicial under factor (1), it is not necessary to inquire into the other factors. <u>Almeida</u>, 54 Haw. at 447, 509 P.2d at 552. As Alkire was brought to trial three months after her arrest, there was no violation of her constitutional rights to speedy trial.

including evidence regarding truth or veracity, existed in the files of the testifying police officers. Alkire maintains that despite this representation, the prosecutor was required to investigate further by personally reviewing the files for impeachment materials to satisfy Brady, which, as noted above, held that "[t]he suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the good faith or bad faith of the prosecution." Fukusaku, 85 Hawai'i at 479, 946 P.2d at 49 (quoting State v. Matafeo, 71 Haw. 183, 185, 787 P.2d 671, 672 (1990)).

Under Brady, the government must disclose evidence favorable to the defense "where the evidence is material either to guilt or to punishment[.]" Kyles, 514 U.S. at 432 (citing Brady, 373 U.S. at 87). "[F]avorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" Kyles, 514 U.S. at 433 (quoting Bagley, 473 U.S. at 682).

In Kyles, the United State Supreme Court stated that "the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437. In Kyles,

29

a federal habeas case arising out of a capital murder conviction, the State had failed to turn over numerous pieces of evidence favorable to the defendant. 514 U.S. at 431-32. The State argued that because "some of the favorable evidence in issue here was not disclosed even to the prosecutor until after trial," the State "should not be held accountable under Bagley and Brady for evidence known only to police investigators and not to the prosecutor." 514 U.S. at 438. The Supreme Court rejected this argument and explained that its precedent imposes on the prosecutor a "duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." 514 U.S. at 437.

Thus, Kyles imposes an affirmative duty on a prosecutor to learn of favorable evidence known to other government agents, which must be disclosed if it is "material," i.e., gives rise to a reasonable probability that the evidence could lead to a different result at trial. Youngblood v. West Virginia, 547 U.S. 867, 869-70 (2006) (per curiam). "Material" evidence includes that pertaining to witness credibility, as when the "reliability of a given witness may well be determinative of guilt or innocence," the nondisclosure of evidence affecting that witness's credibility is material. Giglio v. United States, 405 U.S. 150, 154 (1972) (citation omitted). Put another way, evidence is material "if there is a reasonable probability that,

had the evidence been disclosed to the defense, the result of the proceeding would have been different." State v. Moriwaki, 71 Haw. 347, 356, 791 P.2d 392, 397 (1990) (quoting Bagley, 473 U.S. at 676).

In Kyles, the Court acknowledged that police investigators sometimes fail to fully inform prosecutors of all that they know, but it also stated that "procedures and regulations can be established to carry [the prosecutor's] burden and to insure communication of all relevant information on each case to every lawyer who deals with it." 514 U.S. at 438 (quoting Giglio, 405 U.S. at 154). Thus, pursuant to Kyles, states may set out procedural rules to address a prosecutor's discovery obligations. We therefore address whether the district court's refusal to order the prosecutor to personally review the testifying police officers' files in Alkire's case met the requirements of our discovery rules.

With respect to discovery obligations under our procedural rules, "[d]isclosure in criminal cases is governed by HRPP Rule 16, which limits discovery 'to cases in which the defendant is charged with a felony,' . . . except as provided in HRPP Rule 16(d)." State v. Lo, 116 Hawaiʻi 23, 26, 169 P.3d 975, 978 (2007). HRPP Rule 16(d) prescribes rules for discovery when a defendant is charged with nonfelony and criminal traffic offenses, and provides that, "[u]pon a showing of materiality

and <u>if the request is reasonable</u>, the court in its discretion may require disclosure as provided for in this Rule 16 in cases other than those in which the defendant is charged with a felony, but not in cases involving violations."  (Emphasis added.)

Because Alkire was charged with a criminal traffic offense, HRPP Rule 16(d) applies.  HRPP Rule 16(d) provides courts with discretion to allow discovery in misdemeanor matters upon a showing of "materiality" and if a request is "reasonable." Being that the patrol officer and SFST officer were to be the only witnesses presented by the State to establish its case against Alkire, the request for exculpatory impeachment evidence with respect to these officers was "material" and "reasonable" for purposes of our discovery rules.

As an officer of the court, the prosecutor in this case represented that the prosecutor's office was not in possession or control of any potentially exculpatory or impeachment information that had not yet been turned over to the defense. But under HRPP Rule 16(b)(2), even if discoverable matters are not within a prosecutor's possession or control, the prosecutor has additional obligations:

> Upon written request of defense counsel and specific designation by defense counsel of material or information which would be discoverable if in the possession or control of the prosecutor and which is in the possession or control of other governmental personnel, the prosecutor shall use <u>diligent good faith efforts</u> to cause such material or information to be made available to defense counsel; and if the prosecutor's efforts are unsuccessful the court shall

32

> issue suitable subpoenas or orders to cause such material or information to be made available to defense counsel.

(Emphasis added.)  Thus, because the officers' files were not within the prosecutor's possession, she was obligated to exercise "diligent good faith efforts to cause such material or information to be made available to defense counsel[,]" if such material was "in the possession or control of other governmental personnel."  HRPP Rule 16(b)(2).

In this regard, the prosecutor further represented she had made affirmative inquiries to both the HPC and the HPD for information pertaining to the truth or veracity of the testifying police officers and was informed that no such information existed.  Under the circumstances of this case, we conclude these efforts of the prosecutor constituted "diligent good faith efforts to cause such material or information to be made available to defense counsel[,]"  satisfying HRPP Rule 16(d)(2) and Kyles.

Our analysis does not, however, end here.  As we stated in State v. Tetu, 139 Hawaiʻi 207, 386 P.3d 844 (2016), HRPP Rule 16 does not set an outer limit on this court's power to ensure a defendant's Hawaiʻi Constitution, article I, section 5 due process right to a fair trial, which requires that "a defendant be given a meaningful opportunity to present a complete defense and that discovery procedures provide the

maximum possible amount of information and a level-playing field in the adversarial process." 139 Hawai'i at 214, 220, 386 P.3d at 851, 857. And as noted in State v. Bowe, 77 Hawai'i 51, 881 P.2d 538 (1994), we are not bound to give the state due process clause the same interpretation as given under the United States Constitution. 77 Hawai'i at 58, 881 P.2d at 545. Thus, state due process rights are also implicated in discovery requests.

We have also stated, however, that "due process is flexible and calls for such procedural protections as the particular situation demands." State v. Mundon, 121 Hawai'i 339, 359, 219 P.3d 1126, 1146 (2009) (citation omitted). Under the circumstances, we conclude that the State satisfied its obligations with respect to Alkire's rights under Hawai'i's due process clause with its inquiries of HPD and HPC, which came back negative.

For all of these reasons, the district court did not abuse its discretion in not requiring the prosecutor to personally review the testifying officers' personnel files.

**C.   As the video recording was material to Alkire's defense and her request was reasonable, the district court abused its discretion in denying her motion to compel the video recording**

**1.   The video recording was material and Alkire's request was reasonable**

In the fourth and last question on certiorari, Alkire contends that the district court abused its discretion with

respect to her motion to compel production of the video recording. As discussed in Section IV.B above, HRPP Rule 16(d) allows a trial court in a criminal traffic case to, in its discretion, require disclosure as provided by HRPP Rule 16, "[u]pon a showing of materiality and if the request is reasonable." The district court denied Alkire's motion to compel video recording on the grounds Alkire had not shown that a "video recording of [Alkire] exists or that it is material[.]" Because Alkire's request was both "reasonable" and "material," the district court abused its discretion in denying her motion to compel video recording.

First, Alkire's request was reasonable. We first note that the State does not even argue that Alkire's request was unreasonable. And with respect to reasonableness, contrary to the district court's ruling, Alkire showed that the video recording should have existed at the time she sent her request to preserve evidence. Alkire attached as exhibits to her motion (1) a copy of the HPD policy requiring video monitoring of all detainees in holding cells; (2) a transcript from a prior unrelated hearing where Sgt. Tong from the HPD Central Receiving Division explained that HPD retains video recordings for "20 to 25 days" before it is written over, unless a request to preserve or subpoena is received; (3) a letter from Sgt. Tong regarding a discovery request for another case where Sgt. Tong stated that

(a) video recordings of the Kalihi Police Station "exist for a period of 30 days after the day and time it was recorded;" and (b) "cameras at the District 5 Kalihi Police Station are positioned to get maximum viewing angle of the exterior of the police station and all access points to the station[]" and provide "surveillance viewing of the adult and juvenile processing and cellblock areas[]"; and (4) Alkire's request to preserve evidence, which was sent to the HPD Central Receiving Division just five days after her arrest. Thus, the HPD under its procedures would have possessed the video recording when it received a request to preserve evidence, and it would not have been burdensome for the State to preserve and then produce the video recording. Thus, Alkire's request was reasonable.

Second, the video recording of Alkire at the Kalihi Police Station is "material" to challenging the police officers' testimony that Alkire demonstrated indicia of intoxication. See Lo, 116 Hawai'i at 27, 169 P.3d at 979 (holding that information regarding the calibration of laser units operated by the police was "material to challenging the accuracy of the particular laser unit," which provided the sole basis for the defendant's charge of excessive speeding).[10] Here, the district court found

---

[10] Other jurisdictions have also concluded that police video recordings are material to the defense when the defendant is charged with impairment or intoxication. See, e.g., Koonce v. District of Columbia, 111 A.3d 1009, 1015 (D.C. 2015) ("[V]ideo of a person just arrested for driving under the

(continued . . .)

Alkire guilty based solely on the indicia of impairment observed by the police officers. Thus, the video recording of Alkire at the Kalihi Police Station shortly after her arrest is material to challenging the police officers' testimony about the indicia of impairment that they allegedly observed. Moreover, the video recording could lead to the discovery of other admissible evidence.[11]

### 2. Before any retrial, the district court must conduct another hearing regarding the video recording

On remand, before any retrial, the district court must hold a hearing to determine if the video recording was preserved. As we stated in Matafeo:

> In Brady v. Maryland, the United States Supreme Court held that the suppression by the prosecution of evidence favorable to the accused violates due process where the evidence is material to guilt or punishment, regardless of the good faith or bad faith of the prosecution. The Brady rule has been incorporated into the Hawai'i due process jurisprudence and relied upon frequently by this court.
>
> . . . .

_____

(. . . continued)

influence or operating a vehicle while impaired is material in that it may assist in showing whether the person was acting in a way consistent with intoxication or impairment."); State v. Ferguson, 2 S.W.3d 912, 918 (Tenn. 1999) (concluding that videotape of sobriety test at police station was "at least material to the preparation of defendant's defense"). See also State v. Zinsli, 966 P.2d 1200, 1205 (Or. Ct. App. 1998) (holding that a dashboard camera video of a defendant performing a field sobriety test was material to the defense "because its replay would have given defendant a unique opportunity to permit the jurors to form their own opinions as to defendant's intoxication level.").

[11] As discovery of the video recording should have been permitted under HRPP Rule 16, we need not reach the issue of whether state constitutional due process also mandated its discovery under Tetu, 139 Hawai'i 207, 386 P.3d 844.

> This court has held that the duty of disclosure is
> operative as a duty of preservation, and that principle
> must be applied on a case-by-case basis[.]
>
> In certain circumstances, regardless of good or bad faith,
> the State may lose or destroy material evidence which is so
> critical to the defense as to make a criminal trial
> fundamentally unfair without it.

71 Haw. at 185, 187, 787 P.2d at 672-73 (citations, alterations, and quotation marks omitted).

Thus, based on due process considerations, if the video recording was not preserved, as indicated in Matafeo, the district court must first determine whether it was so critical to Alkire's defense as to make a criminal trial fundamentally unfair without it. If the district court determines that it was, regardless of good or bad faith, it must dismiss the charge against Alkire. State v. Steger, 114 Hawai'i 162, 169-70, 158 P.3d 280, 287-88 (App. 2006) (citing Matafeo, 71 Haw. at 187, 787 P.2d at 673). If the recording was not preserved and the district court determines, however, that the video recording is not so critical to Alkire's defense as to make a criminal trial fundamentally unfair without it, the district court should then fashion an appropriate remedy.

In civil cases, this court has recognized that trial courts have authority "to fashion a remedy to cure prejudice suffered by one party as a result of another party's loss or destruction of evidence." Stender v. Vincent, 92 Hawai'i 355, 362, 992 P.2d 50, 57 (2000) (internal quotation marks and citation omitted).

Where evidence has been lost or destroyed, the trier of fact may draw an adverse inference that the lost evidence was unfavorable to the spoliator.  92 Hawai'i at 364-65, 992 P.2d at 59-60.

We therefore now hold that the permissive adverse inference rule also applies to criminal cases where, as here, the State should have had a recording in its possession and, despite the accused's timely request to preserve the evidence, the video recording was apparently lost or destroyed.  See People v. Strife, 167 A.D.3d 1095, 1098 (N.Y. App. Div. 2018) (holding that the trial court "erred by failing to provide a permissive adverse inference charge based upon the [State's] failure to preserve a copy of the booking room video on the night of defendant's arrest"); People v. Handy, 988 N.E.2d 879, 882 (N.Y. 2013) ("[A] permissive adverse inference charge should be given where a defendant, using reasonable diligence, has requested evidence reasonably likely to be material, and where that evidence has been destroyed by agents of the State.").

## V.  Conclusion

Based on the reasons discussed above, we vacate the ICA's February 25, 2019 judgment on appeal, which affirmed the

district court's August 30, 2017 judgment, and we remand to the

district court for further proceedings in accordance with this

opinion.

| | |
|---|---|
| Richard L. Holcomb<br>for petitioner/defendant-<br>appellant | /s/ Sabrina S. McKenna<br><br>/s/ Richard W. Pollack |
| Donn Fudo<br>for respondent/plaintiff-<br>appellee | /s/ Michael D. Wilson |

