**NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-24-0000792
25-FEB-2026
08:56 AM
Dkt. 91 SO**

NO. CAAP-24-0000792

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ROBERT A.C. MIDEL, Defendant-Appellant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 1CPC-19-0001435)

SUMMARY DISPOSITION ORDER
(By: Hiraoka, Presiding Judge, McCullen and Guidry, JJ.)

Defendant-Appellant Robert A.C. **Midel** appeals from the Circuit Court of the First Circuit's[1] September 25, 2024 Judgment of Conviction and Sentence, convicting him of Murder in the Second Degree, in violation of Hawai'i Revised Statutes (**HRS**) §§ 706-656 (2014), 707-701.5 (2014).

On appeal, Midel contends the circuit court erred by (1) failing to ensure he knowingly, intelligently, and voluntarily waived his right to a jury trial and denying his

_____

[1] The Honorable Fa'auuga L. To'oto'o presided.

motion to set aside that waiver (points of error (**POE**) 1 and 2); (2) failing to ensure he knowingly, intelligently, and voluntarily waived his right to testify (POE 3); and (3) denying his motion to dismiss for violation of his speedy trial and Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 48[2] rights (POE 4).

Upon careful review of the record and the briefs submitted by the parties, and having given due consideration to

---

[2] HRPP Rule 48 provides in pertinent part:

> **Rule 48.  Dismissal.**
>
>   (a) *By prosecutor.*  The prosecutor may by leave of court file a dismissal of a charge and the prosecution shall thereupon terminate.  Such a dismissal may not be filed during the trial without the consent of the defendant.
>
>   (b) *By court.*  Except in the case of traffic offenses that are not punishable by imprisonment, the court shall, on motion of the defendant, dismiss the charge, with or without prejudice in its discretion, if trial is not commenced within 6 months:
>
>     (1) from the date of arrest if bail is set or from the filing of the charge, whichever is sooner, on any offense based on the same conduct or arising from the same criminal episode for which the arrest or charge was made; or
>
>     (2) from the date of re-arrest or re-filing of the charge, in cases where an initial charge was dismissed upon motion of the defendant; or
>
>     (3) from the date of mistrial, order granting a new trial or remand, in cases where such events require a new trial.
>
>   Clauses (b)(1) and (b)(2) shall not be applicable to any offense for which the arrest was made or the charge was filed prior to the effective date of the rule.
>
>     . . . .

(Formatting altered.)

2

the issues raised and the arguments advanced, we resolve the points of error as discussed below and affirm.

Vincent **Vanterpool** testified that on August 18, 2018, he worked for Securitas as a security officer and resided at the Nuʻuanu YMCA. At about 2:15 a.m., Vanterpool observed Midel and Ryan **Cavalear** in a hallway "punching each other." As Vanterpool approached Midel and Cavalear, Midel "did a right-hand swing towards [Cavalear], and [Cavalear's] legs locked up, and [Cavalear] fell over." Midel turned around, and Vanterpool saw "a large black knife" in Midel's right hand. Vanterpool heard Midel "mention[] everybody there was magical, which [Vanterpool] thought was strange." Midel then "looked down at [Cavalear] and said, I can't leave him like this, he's still alive" and pushed the knife into Cavalear's neck. Cavalear died.

In October 2018, the State filed a superseding indictment charging Midel for Murder in the Second Degree in Case No. 1CPC-18-0001355. Midel moved to dismiss for violation of HRPP Rule 48; the circuit court granted Midel's motion and dismissed the superseding indictment without prejudice.

In October 2019, the State reindicted Midel for Murder in the Second Degree in the proceeding underlying this appeal. The State moved to set a firm trial week and informed the circuit court that the former Chief Medical Examiner for the City and County of Honolulu, Dr. Christopher Happy (**Dr. Happy**),

was a necessary witness but now resided on the continent. The State noted that HRPP Rule 48 "runs on March 30, 2020."

A jury trial was scheduled for the week of January 6, 2020. Midel, against his counsel's advice, waived his right to a jury trial. The circuit court set a new trial week beginning March 23, 2020.

On March 16, 2020, days before the scheduled trial, the Hawaiʻi Supreme Court announced that all ongoing trials would be postponed until after April 30, 2020, due to the COVID-19 pandemic. In re Judiciary's Response to the COVID-19 Outbreak, SCMF-20-0000152, docket #1, filed Mar. 16, 2020.

The circuit court rescheduled Midel's trial from March 23, 2020, to May 4, 2020.

On April 27, 2020, the Hawaiʻi Supreme Court entered an order prohibiting persons from entering judiciary facilities if they had traveled in the prior fourteen days. In re Judiciary's Response to the COVID-19 Outbreak, SCMF-20-0000152, docket #19, filed Apr. 27, 2020. The parties agreed to continue the trial to June 29, 2020.

A bench trial was held on June 29 and 30, 2020. At the conclusion of proceedings on June 30, the State indicated it had one more witness to present, Dr. Happy. The circuit court recessed and scheduled a status conference to discuss when Dr. Happy would be able to return to Hawaiʻi to testify.

4

On August 10, 2020, at the status conference, the parties discussed resuming trial the week of October 12, 2020. The State disclosed that Dr. Happy was willing to test for COVID-19 to return to testify, but that if a two-week quarantine requirement for incoming travelers was reimposed, Dr. Happy would not come and the State would request another continuance.

On October 15, 2020, the circuit court continued the trial from October 29, 2020, to November 17, 2020.

On October 22, 2020, the Hawaiʻi Supreme Court issued an order allowing persons who had traveled in the prior fourteen days to enter judiciary facilities if they tested negative for COVID-19 within seventy-two hours from the final leg of departure. In re Judiciary's Response to the COVID-19 Outbreak, SCMF-20-0000152, docket #69, filed Oct. 22, 2020.

On November 16, 2020, trial was continued again to December 29, 2020.

On December 29, 2020, the State was not ready to proceed and requested a three-month continuance. The State indicated that, in order to fly in to testify on December 29, 2020, Dr. Happy was required to take a COVID-19 test on Christmas Day, but the State was unable to secure an appointment that day or to guarantee that the results would be received on time. The deputy prosecuting attorney further informed the circuit court that a new deputy would be assigned to complete

the trial, though that was not the reason for the requested continuance. Midel's counsel stated, "[w]e understand [HRPP] Rule 48 does not apply. . . . But we are objecting to any continuance, especially three months." Over Midel's objection, the circuit court continued the trial to March 25, 2021.

On March 25, 2021, Dr. Happy testified, and the State rested its case-in-chief. Midel waived his right to testify, exercised his right not to testify, and rested without presenting any witnesses or evidence.

On May 26, 2021, Midel moved to dismiss the indictment for violation of his speedy trial and HRPP Rule 48 rights (**Motion to Dismiss**).

On June 17, 2021, the circuit court denied Midel's Motion to Dismiss, found Midel guilty of second-degree murder, and scheduled sentencing for September 15, 2021.

On August 2, 2021, Midel filed a Motion to Appoint Three Qualified Examiners pursuant to HRS § 704-404 (Supp. 2020), which was granted.[3] Of the three examiner reports, two opined Midel was not fit to proceed, and the third opined that he was.

---

[3] The Honorable Christine E. Kuriyama presided over the hearings pertaining to Midel's fitness to proceed.

On January 13, 2022, the circuit court found that Midel was not fit to proceed and committed Midel to the custody of the State Director of Health.

On March 21, 2022, the Hawaiʻi State Hospital requested that the circuit court appoint a panel to reassess Midel's "current fitness to proceed," noting that Midel did "not appear to be experiencing symptoms of a mental disease, disorder or defect." The circuit court granted Hawaiʻi State Hospital's request, and later received three examiner reports, all opining that Midel was fit to proceed. The circuit court found Midel fit to proceed.

On July 18, 2023, Midel filed a Motion to Set Aside Waiver of Jury Trial. Following a hearing, the circuit court denied Midel's motion.

On September 25, 2024, the circuit court sentenced Midel to life in prison with the possibility of parole and ordered restitution.

Midel timely appealed.

(1) First, Midel contends the circuit court erred by failing to ensure he knowingly, intelligently, and voluntarily waived his right to a jury trial and by denying his motion to set aside that waiver.

"It is well established that Hawaiʻi law recognizes the right to a jury trial as a fundamental right." State v. Torres,

7

144 Hawaiʻi 282, 288, 439 P.3d 234, 240 (2019) (footnote omitted). "This right cannot be relinquished absent a knowing, intelligent, and voluntary waiver." Id.

Defendants carry "the burden of demonstrating by a preponderance of the evidence that [their] waiver was involuntary." State v. Gomez-Lobato, 130 Hawaiʻi 465, 469, 312 P.3d 897, 901 (2013) (internal quotation marks and citation omitted). We note that Midel does not point to where in the record he objected to the circuit court's colloquy as insufficient. See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4) (requiring appellants to state "where in the record the alleged error was objected to").

**(a)** Midel argues the circuit erroneously found his waiver was knowing, intelligent, and voluntary.

"A waiver is knowing and intelligent when it is made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." Torres, 144 Hawaiʻi at 288, 439 P.3d at 240 (internal quotation marks and citation omitted).

To determine whether a waiver is knowing and intelligent, the Hawaiʻi Supreme Court has advised trial courts to conduct a Duarte-Higareda colloquy, which informs the defendant that: "(1) twelve members of the community compose a jury, (2) the defendant may take part in jury selection, (3) a

8

jury verdict must be unanimous, and (4) the court alone decides guilt or innocence if the defendant waives a jury trial." Id. (citing U.S. v. Duarte-Higareda, 113 F.3d 1000, 1002 (9th Cir. 1997)).

"A waiver is voluntary when it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." Id. (internal quotation marks and citation omitted).

Here, the circuit court's questions tracked the Duarte-Higareda colloquy. The circuit court explained that Midel and his "lawyer and prosecutor will help select 12 people from the community"; "all those 12 people must . . . unanimously agree that [he is] guilty"; and "[he is] now asking the court to listen to the evidence in [his] case and then the court will decide whether [he is] guilty or not guilty based on the evidence[.]" After each advisement, Midel indicated he understood. Thus, Midel's waiver was knowing and intelligent.

The circuit court also asked whether anyone was forcing Midel to waive his right to a jury trial or "making [him] any promises." He responded no. Midel's responses indicate his waiver was voluntary.

**(b)** Midel argues that the circuit court's colloquy failed to consider his history of mental illness (a "salient fact"), which the circuit court was apprised of through the

pretrial bail report in Case No. 1CPC-18-0001355 that was dismissed. "Salient facts, such as mental illness or language barriers, require that a court effectively engage the defendant in a dialogue that will effectuate the rationale behind the colloquy and the on-the-record waiver requirements." State v. Chong Hung Han, 130 Hawaiʻi 83, 92, 306 P.3d 128, 137 (2013) (internal quotation marks omitted) (discussing salient facts in the context of waiving the right to testify or not to testify).

The circuit court began its colloquy by asking if Midel took any medication, was under a doctor's care, or consumed alcohol that morning. Midel answered no to all three questions.

The circuit court then asked Midel if his mind was clear that morning. Midel answered yes. The circuit court continued by asking questions to determine whether Midel understood his right to a jury trial. Midel's responses show he understood. The circuit court's questions were pertinent to ascertaining whether Midel's waiver was knowing, voluntary, and intelligent.

Nothing in the dialogue indicates that Midel's responses were inappropriate or incoherent. Nothing in the dialogue raises concerns regarding Midel's mental health.

And although Midel claims the pretrial bail report in Case No. 1CPC-18-0001355 should have alerted the circuit court

10

to the possibility of mental health concerns, Midel does not explain how an eighteen-month-old pretrial bail report would have indicated he was suffering from mental health issues at the time he waived his right to a jury trial in this case.

Also, Midel appeared with counsel, who indicated she advised him against giving up his right to a jury trial. In light of counsel's contrary advice, the circuit court decided to ask Midel more questions to ascertain whether Midel understood his right to a jury trial and his waiver of that right. Nothing from that conversation indicated that mental health was a salient fact during that waiver.

**(c)** Midel also argues the circuit court failed to conduct any meaningful dialogue as it required only yes or no responses and the dialogue was "more akin to an advisory or a lecture, as opposed to a thorough colloquy."

A "true" colloquy "consists of a verbal exchange between the judge and the defendant in which the judge ascertains the defendant's understanding of the proceedings and of the defendant's rights." State v. Celestine, 142 Hawaiʻi 165, 170, 415 P.3d 907, 912 (2018) (internal quotation marks, emphasis, and citation omitted) (examining a true colloquy in the context of the rights to testify and not to testify).

After almost each explanation, the circuit court asked Midel if he understood and allowed Midel to answer. Contrary to

11

Midel's assertion, the transcript does not reflect the circuit court merely lectured Midel. And Midel does not proffer suggested questions that would have rendered the colloquy a "truer" colloquy.

In sum, Midel fails to meet his burden of showing, by a preponderance of the evidence, that his waiver was involuntary or that his substantial rights were affected. Moreover, for the reasons discussed, the circuit court did not err by denying Midel's motion to set aside the waiver of his right to a jury trial.

**(2)** Midel next challenges the waiver of his right to testify. As with his arguments regarding his waiver of his right to a jury trial, Midel argues "the circuit court merely read a lengthy advisement without engaging [him] in any meaningful dialogue or discussion after each segment was covered or pausing to ensure understanding [of] each aspect of the jury trial." Midel also argues his "history of mental health presented a 'salient fact' that should have prompted the circuit court to ask additional questions to verify that [he] truly understood the right that he was waiving." (Emphasis omitted.)

"Hawaiʻi law has historically protected both the right to testify and the right not to testify." Id. at 169, 415 P.3d at 911. To protect these rights, the trial court must conduct an on-the-record colloquy. Id. at 169-70, 415 P.3d at 911-12.

12

As stated above, a colloquy must be a true colloquy. Id. at 170, 415 P.3d at 912.

As to Midel's argument that the court did not engage in a meaningful dialogue or pause to ensure his understanding, the record shows that the court paused consistently to ascertain Midel's understanding. The court also invited Midel to ask questions and to take his time. Contrary to Midel's argument, the circuit court's colloquy was meaningful.

As to Midel's argument that the circuit court failed to consider the "salient fact" of his "history of mental health," Midel does not point to anywhere in the proceedings prior to the waiver of his right to testify where the court should have been on notice that Midel's mental health was a salient fact during that waiver. See State v. Adler, 108 Hawaiʻi 169, 178, 118 P.3d 652, 661 (2005) (explaining appellants bear "the burden to show error by reference to matters in the record" and courts are "not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions" (internal quotation marks and citations omitted)).

In sum, Midel failed to show that the circuit court's colloquy affected his substantial rights.

(3) Finally, Midel challenges the denial of his Motion to Dismiss. Citing State v. Alkire, Midel argues that his "trial did not 'meaningfully' commence on June 29, 2020,"

because "the State had no intention of completing the trial on June 29, June 30, or soon thereafter." See 148 Hawaiʻi 73, 87, 468 P.3d 87, 101 (2020).

In Alkire, the Hawaiʻi Supreme Court explained that "HRPP Rule 48 requires a 'meaningful' commencement of trial." Id. at 87, 468 P.3d at 101. "[A] trial is 'meaningfully' commenced when a trial court has 'reasonably' committed its resources to the trial, which also requires that the parties be ready to proceed." Id.

The State moved to set a firm trial week and informed the circuit court that Dr. Happy was a necessary witness but now resided on the continent. Trial was ultimately postponed due to events related to COVID-19.

Trial commenced on June 29, 2020. Except for Dr. Happy, the circuit court heard testimony from all of the State's witnesses over the first two days, including: (1) Honolulu Police Department (**HPD**) Officer Paul Acquavella, (2) HPD Sergeant Darryl Jones, (3) HPD Evidence Specialist Michael Lynch, (4) HPD Detective Jason Malacas, (5) HPD Evidence Specialist Hideko Yoshihara, (6) Jorge Santos, (7) Vincent Vanterpool, (8) HPD Officer Che-Wai Lau, (9) Dr. Matthew Koenig, (10) HPD Officer Steven Lee, (11) HPD Evidence Specialist Brittany Copp, (12) HPD Officer Christopher Chong, (13) HPD

Evidence Specialist Garrick Baligad, (14) HPD Criminalist Michelle Amorin, and (15) Quintin Iriarte.

And although Dr. Happy's ability (and willingness) to travel was hampered by COVID-19 restrictions, the State was otherwise ready to proceed, and the circuit court had reasonably committed its resources to trial.

Under the particular circumstances of this case, we decline to vacate Midel's conviction under <u>Alkire</u>.  <u>See</u> <u>id.</u>

Based on the foregoing, we affirm the circuit court's September 25, 2024 Judgment of Conviction and Sentence.

DATED:  Honolulu, Hawaiʻi, February 25, 2026.

On the briefs:

James S. Tabe,
for Defendant-Appellant.

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellee.

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Sonja M.P. McCullen
Associate Judge

/s/ Kimberly T. Guidry
Associate Judge